PURCELL AND WARDROPE CHARTERED, Plaintiff-Appellant and Cross-Appellee, v. THE HERTZ CORPORATION, Defendant-Appellee and Cross-Appellant.

First District (1st Division)   No. 87—2586

Opinion filed September 26, 1988.—Modified on denial of rehearing November 21, 1988.

Dimonte & Lizak, of Chicago (Albert Koretzky, of counsel), for appellant.

Coffield, Ungaretti, Harris & Slavin, of Chicago (Michael W. Coffield and Michael D. McCormick, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff Purcell and Wardrope Chartered (P&W) brought a class action suit on behalf of a nationwide class[1] to recover security deposits and accrued interest on security deposits that the defendant, Hertz Corporation (Hertz), required pursuant to the terms of its automobile lease contracts. Hertz filed several affirmative defenses and a counterclaim for alleged damages specific to the automobile P&W had leased. The trial court denied class certification, finding that individual questions of fact and law predominated, and that since Hertz had

---

[1]Nationwide State court class actions are constitutionally permitted and have also been recognized in Illinois. See *Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965; see also *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478.

raised several affirmative defenses and filed a counterclaim specific to P&W, P&W could not provide adequate representation for a class action. Accordingly, the case was tried as an individual action under Illinois law. Following a bench trial, judgment was entered in favor of Hertz on counts I and II of P&W's amended complaint and in favor of Hertz and against P&W on Hertz' counterclaim. The court, however, only awarded "nominal" damages to Hertz in the amount of $6 on its counterclaim. On count III of the amended complaint, judgment was entered in favor of P&W, and the court awarded P&W compensatory damages in the amount of $451.61.

P&W appeals the trial court's denial of the class certification and that portion of the judgment rendered in Hertz' favor. Hertz has cross-appealed the trial court's award of $6 in damages to it.

On February 2, 1977, P&W entered into a lease agreement with Hertz for the use of a 1977 Oldsmobile Regency 98. The lease was a form lease, which was for a term of 26 months, and required a monthly payment of approximately $260. The lease was signed by John Wardrope for P&W and by George Lochetto, the Hertz regional manager, in Illinois. The provisions of the lease stated that acceptance would take place in Hertz' home office in New York, although there was no indication that any formal action for approval was necessary by Hertz' office in New York. Thereafter, the car was picked up and licensed in Illinois. For the duration of the lease, the car was stored, kept, used, and maintained in Illinois.

The agreement provided that the monthly rental payments were to be sent by P&W to Hertz' office in New York. The express terms of the lease required P&W to pay a security deposit, authorized Hertz to commingle the security deposit with Hertz' general funds, and provided that the security deposit would not bear any interest while in the possession of Hertz. In conjunction with the written lease agreement, and as was apparently Hertz' practice, the parties orally agreed that the amount of the security deposit would be one month's rental payment, which, in this case, was $260.

On June 22, 1979, the plaintiff returned the car to Hertz, in Illinois, in termination of the lease. There was no dispute that P&W had substituted a replacement tire for the spare, but P&W asserted that the car was otherwise in "top" condition. Moreover, Mr. Wardrope testified that when he returned the car at the end of the lease, a Hertz employee told him that the car was the cleanest she had ever seen. Nevertheless, Hertz' vice-president in charge of leasing operations, Mr. Rybicki, testified at trial that an inspection report on the car, prepared approximately 22 days after the car had

been returned to Hertz, showed damages in the amount of $280, which was in excess of ordinary wear and tear. Mr. Rybicki, however, could not explain how these figures were ascertained, nor could he explain when the photographs of the alleged damage to the car were taken. Furthermore, Mr. Rybicki stated that Hertz' standard procedure regarding the return of security deposits at the termination of the lease period required the lessee to request the deposit in writing, although this requirement was not set forth in the lease. The evidence showed that P&W called Hertz to request the balance of its deposit and that Hertz had then instructed P&W to send a written request for the deposit. P&W did not make a written request for its deposit. It was only after P&W brought this suit to recover its security deposit that Hertz claimed that it, not P&W, was entitled to the deposit because of the alleged damage to the car.

Mr. North, vice-president of Hertz' car leasing division, claimed, in an affidavit, that Hertz entered into many different types of leasing agreements, each of which was uniquely tailored to the individual lessee's needs and that, consequently, different lessees often incurred different costs and liabilities under the different leasing agreements. However, contrary to Mr. North's assertions, the lease between P&W and Hertz was a preprinted, form-type lease, drafted by Hertz, with blanks for the lessee's name, the type of vehicle, the term and the payment amounts.

Four issues are raised on review: (1) did the trial court err when it denied class certification of the claim; (2) did the trial court err when it applied Illinois law to the plaintiff's claim; (3) did the trial court err when it found that P&W waived certain rights pertaining to the security deposit which were provided under Illinois law regarding leases of personal property; and (4) did the trial court err when it entered judgment for Hertz on its counterclaim and in its calculation of damages pursuant to that judgment.

■ The first issue raised by P&W is whether the trial court erred when it denied class certification of its claim. In Illinois, class certification is governed by section 2—801 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—801). That section requires that four elements be satisfied before an action may be maintained as a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over individual questions; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. (Ill. Rev. Stat. 1985, ch.

110, par. 2—801.) Certification of a class is within the sound discretion of the trial court and will be disturbed only if there is an abuse of that discretion or if impermissible legal criteria are applied. *Wenthold v. AT&T Technologies, Inc.* (1986), 142 Ill. App. 3d 612, 616, 491 N.E.2d 1263, 1266.

The dispute here arises as to the second, third, and fourth requirements of section 2—801, since both parties have agreed that the first requirement has been met. The leading case in Illinois on class actions, *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478, specifically addressed the first requirement of predominating common questions. (*Gillette*, 87 Ill. 2d at 16-20, 428 N.E.2d at 483-85.) In *Gillette*, the Illinois Supreme Court upheld a class action certification where all members of the plaintiff class claimed that they were to have received a table lighter from the defendant, Gillette, as part of a promotional offer. The free table lighter was to be supplied by Gillette upon a person submitting proof of the purchase of two Gillette throw-away lighters. The demand exceeded the supply of table lighters and Gillette was unable to fill all requests; thereafter, a class action was filed on behalf of those who did not receive the free table lighter. The court there found that the series of essentially identical transactions between the plaintiffs and Gillette, which gave rise to their claim for the table lighters, presented common questions of fact and law. The *Gillette* court noted that the existence of individual issues, a separate determination of individual damages, multiple theories of recovery, or even the inability of some class members to obtain relief because of a particular individual factor will not, standing alone, defeat a class certification if the common questions of fact or law are otherwise predominant. In so ruling, the *Gillette* court observed:

" '[T]he hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action. Where it appears that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a minor character should be required to bar the action.' " (*Gillette*, 87 Ill. 2d at 20, 428 N.E.2d at 485, quoting *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598.)

The *Gillette* court further found that the individual defenses of putative class members concerning reliance, satisfaction, waiver and consideration were also not overriding individual questions or issues. *Gillette*, 87 Ill. 2d at 19-20, 428 N.E.2d at 484.

██ In a class proceeding, if certain individual questions exist

which may require individual determinations, these individual questions may be handled within subclasses, as long as the common issues predominate. (*Wenthold,* 142 Ill. App. 3d at 619, 491 N.E.2d at 1267.) Indeed, even questions such as the one raised here concerning whether the laws of different States apply to the various transactions will not ordinarily prevent the certification of a class action proceeding. A class action may, nevertheless, still be maintained, despite these conflicting or differing State laws, and the court may simply choose to divide the class into subclasses. (*Martin v. Heinold Commodities, Inc.* (1987), 117 Ill. 2d 67, 81, 510 N.E.2d 840, 846; see *Wenthold,* 142 Ill. App. 3d at 619, 491 N.E.2d at 1267, citing *Gillette,* 87 Ill. 2d 7, 428 N.E.2d 478.) Moreover, if at some later time in the litigation the subclassification becomes unmanageable, the court, of course, always has the option to set aside the class certification or a portion of it. (See *Heinold Commodities,* 117 Ill. 2d at 81-82, 510 N.E.2d at 846; see also *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 231, 384 N.E.2d 316, 319, *later proceeding* (1985), 138 Ill. App. 3d 756, 483 N.E.2d 1312 (class certification may be set aside at a later point in time if clearly changed circumstances exist).) Thus, the court can and should appropriately address potential future problems as they arise. Here, since there has been virtually no discovery concerning any class issues, the most that can be contended is that there are hypothetical problems that may arise in the future. As the *Gillette* court established, this is not a sufficient basis to refuse to certify an otherwise properly pleaded class action. See *Gillette,* 87 Ill. 2d 7, 428 N.E.2d 478.

Hertz asserts that the common questions of fact and law do not predominate over the individual questions. P&W, however, claims that common fact and law questions exist as to whether all members of the plaintiff putative nationwide class who entered into leases with Hertz and paid security deposits are entitled, at the termination of the lease, to recovery of the deposits and to the payment of interest on those deposits during the period they were held by Hertz. P&W argues that the form of the particular lease used makes no difference since the language regarding security deposits was similar in all of the leases utilized by Hertz, with only a few exceptions. P&W also argues that another common question is whether Hertz could retain the security deposits, as it claimed was its policy, until or unless the lessees affirmatively requested the deposit back in writing. Contrarily, Hertz contends that no common issues of fact or law exist because each lease transaction is in fact dissimilar. There are, Hertz asserts, differences in the terms of each lease and the amounts

required and returned for each security deposit under each lease, which, it argues, necessarily depend upon the individual facts and, thus, there can be no commonality. Hertz further claims that various factors must be examined in each case before a lessee is entitled to a return of the security deposit, including: the lease itself; any liability for damage to the vehicle; excess mileage on the vehicle; and any other lease charges incurred by the individual lessee. These factors, Hertz asserts, destroy the possibility of class treatment for the security deposits in P&W's putative class. Finally, Hertz contends that the State laws vary greatly concerning the right to interest on security deposits and on the method of maintaining those security deposits; therefore, P&W cannot show any common issue of law either.

██ We find that the record here and the allegations in P&W's complaint demonstrate that, at least at the present time, the questions of fact and law do predominate over any individual questions. The common questions of fact and law presented are whether Hertz can lawfully withhold the security deposits at the termination of the auto lease in the absence of a request for a return of the money by the lessee in writing; whether Hertz must legally pay interest on the security deposits during the period they are held by Hertz; and whether Hertz may legally commingle the security deposits with its other funds during this same period[2].

Generally, under Illinois and New York law, the only State law pertinent to issues concerning the known, named parties in the case at this time, interest is required on security deposits for leases of personal property and those funds cannot be commingled with the lessor's other funds. (See Ill. Rev. Stat. 1985, ch. 29, pars. 9, 14; N.Y. General Obligations Law §7—101 (McKinney 1985).) While the question of choice of law may present some problems in a nationwide class (see *Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965), it is, as noted earlier, also clear that under the decision in *Gillette*, it is permissible to break the class down into subclasses for purposes of handling the issue involving different State laws. (*Heinold Commodities*, 117 Ill. 2d at 81, 510 N.E.2d at 846; see also Coffee, *The Regulation of Entrepreneurial*

---

[2]Although P&W has requested in its petition for rehearing that the plaintiff class include all of Hertz' leases for personal property, as opposed to only the class of auto leases, our ruling must be limited to the class of auto leases at this point in the litigation. As this decision emphasizes, the class structure is flexible in nature and may be adjusted or modified by the trial court at a later point in the litigation to accommodate any changes or newly discovered facts as they arise. See *Frank v. Teachers Insurance & Annuity Association* (1978), 71 Ill. 2d 583, 376 N.E.2d 1377.

*Litigation: Balancing Fairness & Efficiency in the Large Class Action*, 54 U. Chi. L. Rev. 877, 921 (1987); Miller & Crump, *Jurisdiction & Choice of Law in Multistate Class Actions After Phillips Petroleum Co. v. Shutts*, 96 Harv. L.J. 1 (1986).) Hertz has not disputed, and the evidence here indicates, that most, if not all, of Hertz' auto leases contain a provision which provides that security deposits will not bear interest and, further, that Hertz may commingle these funds with its other general funds. Thus, as P&W has alleged, whether Hertz was required to pay interest on the deposits and whether it could commingle funds are common questions of fact and law which do predominate over other questions in the litigation. Accordingly, we find that the trial court improperly held that individual questions of fact and law predominated over common questions in this case.

Moreover, under Hertz' leases, although the security deposits were required to be repaid upon termination of the leases, Hertz' practice was to not repay the security deposits unless the lessees requested the return of the deposit from Hertz in writing, even though their leases did not state that such a request was necessary. Hence, this practice raises other common fact and law questions.

Furthermore, we are not persuaded by Hertz' argument that the auto leases were individually negotiated, particularly as they relate to security deposits, or that any individualized nature of these leases destroyed the basis for a class action. From the allegations and the evidence presented in the case below, it is clear that the lease provisions relating to the security deposits were similar in form to the provisions in all of Hertz' other auto leases. Thus, P&W has alleged a scenario in which a class action is an especially appropriate procedure to resolve such questions. Furthermore, the allegations of P&W are supported by the undisputed evidence in the record which establishes that Hertz had a policy to retain security deposits after termination of the lease, unless the lessee requested the return of the deposit in writing. P&W's allegations concerning the security deposit provisions, the interest, and the commingling are common to all of Hertz' leases, and Hertz has offered no evidence to dispute these assertions.

In regards to the third and fourth requirements for class certification, Hertz argues that P&W will not be an adequate representative of the putative class here because of the uniqueness of P&W's claim. Hertz further argues that, in any event, the fourth requirement cannot be met, because class certification cannot resolve this dispute fairly, economically, and efficiently, due to the unique nature

of each claim.

On the other hand, P&W submits that it can provide adequate representation for the class since its claim is not antagonistic to the interests of the other potential members of the class, it is obviously not a collusive action, and the class action is a fair and efficient method of adjudicating similar multiple claims such as here. Hertz, however, argues again that the individual issues such as damage to the P&W automobile, the specific language in P&W's lease with Hertz, and the counterclaim filed by Hertz against P&W, destroy P&W's ability to be an adequate representative, and, thus, prohibit class certification.

■■ ■ A representative will not be disqualified merely because his or her claim is not exactly the same as those of other class members. It is only necessary that the representative not seek relief antagonistic to the interests of other potential class members. (See *Carrao v. Health Care Service Corp.* (1983), 118 Ill. App. 3d 417, 428, 454 N.E.2d 781, 790.) Additionally, Hertz' assertions that the individual defenses and the fact that it has filed a counterclaim are not sufficient to defeat class certification. As this court stated in *Wenthold v. AT&T*, defenses which may require individual determinations will not defeat a party's ability to adequately represent a class. (*Wenthold*, 142 Ill. App. 3d at 619, 491 N.E.2d at 1267.) The purpose of the requirement of adequate representation is merely to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. (See *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 338-39, 371 N.E.2d 634, 643.) Here, the allegations in P&W's complaint establish that P&W is an adequate class representative since its claim is not antagonistic to the interests of other potential class members. It is not, as noted by P&W, a collusive action, but it is truly an adversary proceeding against the defendant, Hertz, for breach of its contractual agreement. Since the allegations of P&W establish that it will be an adequate representative, these allegations also provide a sufficient basis to certify a class action, at least preliminarily. If any individual determinations of defenses become necessary, that situation, as noted earlier, may be addressed at that time. Should questions arise concerning the continued adequacy of representation by the plaintiff, P&W, for whatever reasons, these matters may also be addressed at a later time. Accordingly, any adjustments or modifications that become necessary at a future time may properly be made then, after notice and an opportunity for the parties to be heard on the issue. (See *Frank v. Teachers Insurance & Annuity Association*

*of America* (1978), 71 Ill. 2d 583, 376 N.E.2d 1377.) Of course, as we have also noted, a court may even, at a later time, modify the class structure or dismiss the class action itself, if necessary to accommodate any changes such as those concerning adequate representation. *Frank*, 71 Ill. 2d at 590, 376 N.E.2d at 1379.

■■ Finally, the predominance of common issues here would, we believe, make a class action under the circumstances presented a fair and efficient method to resolve the dispute. Again, as stated above, while there may be certain individual determinations that will need to be made at a later time, those matters can and should be dealt with at the time when they can be determined on their merits. Thus, the trial court can review the issues if and when it becomes necessary. At the present time, however, the allegations here show that a class certification of the claim is the most effective way to deal with those matters. Thus, under such circumstances, we find that the trial court abused its discretion when it denied P&W's request for class certification of the claims it presented.

Because we find that the trial court improperly denied class certification, the judgment entered on P&W's complaint must, at least in part, be reversed and remanded. Accordingly, we also find it necessary to address those remaining issues, raised by the parties, which are pertinent to the resolution of this claim.

■■ ■ Another issue raised by Hertz is whether the trial court erroneously applied Illinois law to P&W's claim. When confronted with conflict of law issues, Illinois courts determine the choice of law according to the "most significant contacts" rule (*Boise Cascade Home & Land Corp. v. Utilities, Inc.* (1984), 127 Ill. App. 3d 4, 468 N.E.2d 442), a rule approved by the United States Supreme Court (*Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965). The factors to be considered in determining which State has the most significant relationship to a contract claim are: the place of negotiation, the place of execution or contracting, the place of performance, the location of the subject matter of the contract, the domicile, residence, place of incorporation, and the business of the parties. (*Boise Cascade*, 127 Ill. App. 3d at 13, 468 N.E.2d at 449.) Here, the parties agree that performance of the lease between Hertz and P&W took place in Illinois. It is also undisputed that the car was delivered in Illinois, to an Illinois resident as the lessee, that the car was used and maintained in Illinois, that it was registered and titled in Illinois, and that it was ultimately returned in Illinois. Conversely, rental payments were sent to New York by P&W, Hertz' headquarters is located in New York, and the

contract provided that acceptance of the contract was to take place in New York. On the other hand, there can be no doubt that the lease in question was executed in Illinois, since it was signed, approved and accepted by a Hertz regional manager in Illinois. Thus, in so far as the claim of P&W is concerned, Illinois is the proper law to apply to the claim. If, however, at a later point in the litigation, after evidence is presented regarding claims of other class members, and choice of law questions arise concerning the claims of other class members, then the choice of law determination may have to be reexamined for those other class members or groups with, perhaps, a division of their claims, as discussed earlier. See generally *Gillette*, 87 Ill. 2d 7, 428 N.E.2d 478.[3]

█ The next issue presented by P&W in this appeal is whether the trial court erred when it refused to apply the provisions of Illinois statutory law concerning contracts for the rental of personal property. (See Ill. Rev. Stat. 1985, ch. 29, pars. 9, 14 (repealed by Pub. Act 85—733, §6, effective Jan. 1, 1988 (hereinafter referred to

---

[3]P&W has filed its class action on behalf of a nationwide class. Under the recent United States Supreme Court case of *Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965, a nationwide class action in a State court may be maintained as long as proper notice and the opportunity to opt out are accorded to all class members. At this point in the litigation, however, questions as to the nature of the notice and the opportunity to opt out are premature.

We also note that the court there found that the substantive law of Kansas, where the action had been filed, could not be uniformly applied to each plaintiff in the class action because the constitutional limitations on choice of law must be maintained even in a nationwide class action context. The Court found that the Kansas State court could not uniformly apply its own substantive State law since Kansas did not have a "significant contact or aggregation of contacts" to the claims asserted by each member of the plaintiff class.

The Supreme Court additionally found that there were substantive conflicts among the relevant laws of the several States which would be applicable. (*Shutts*, 472 U.S. at 818, 86 L. Ed. 2d at 646, 105 S. Ct. at 2977.) Consequently, the Court remanded that issue to the Kansas court. (*Shutts*, 472 U.S. 797, 86 L. Ed. 2d 688, 105 S. Ct. 2965.) While the Supreme Court did not specifically address the option of subclassification, it, nevertheless, has been recognized that subclassification is a permissible means to accommodate the application of the laws of several States to a class action, and, in fact, this was the method employed by the Kansas court on remand. (*Shutts v. Phillips Petroleum Co.* (1987), 240 Kan. 764, 732 P.2d 1286, *cert. denied, mand. denied* (1988), _____ U.S. _____, 101 L. Ed. 2d 918, 108 S. Ct. 2883. See *Martin v. Heinold Commodities, Inc.* (1987), 117 Ill. 2d 67, 510 N.E.2d 840 (the Illinois Supreme Court observed that it, too, had specifically found subclassification an appropriate manner of addressing such a problem relying on *Miner v. Gillette*, 87 Ill. 2d 7, 428 N.E.2d 478).) In *Heinold Commodities*, the court, after applying the *Phillips Petroleum* standard to the facts of that case, found that the substantive law of Illinois could be applied there.

as leasing statute)).)[4] Under that statute, the lessor must hold the security deposit for the leased property in trust in a bank, trust or savings and loan; the lessor must pay interest on the deposit; and the accrued interest must be kept with the principal sum. (Ill. Rev. Stat. 1985, ch. 29, pars. 9, 14.) Furthermore, it is well settled in Illinois that if a contractual agreement expressly contravenes a law or a policy of the State, that contract will be deemed illegal and unenforceable. (*Coronet Insurance Co. v. Ferrill* (1985), 134 Ill. App. 3d 483, 481 N.E.2d 43.) Of course, specific provisions of a contract or specific legal requirements may be waived under certain circumstances. (See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) But, such is not the case where there are unequal bargaining positions between the parties so that any waiver is in reality a part of a contract of adhesion. See *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 413 N.E.2d 1252.

The trial court here found that although Illinois law required interest to be paid on deposits which were not commingled, the requirement was not mandatory; the parties could and, in fact, did waive payment of interest by their agreement. However, P&W argues that the statutory language of the leasing statute specifically required the deposits to earn interest and also specifically required that the deposited funds could not be commingled. Hence, P&W contends that Illinois law is mandatory and requires that the lessor act as a trustee for the deposited funds and that the lessor, as trustee, hold the deposited funds separately and pay interest on these funds. Hertz, on the contrary, contends that because the leasing statute does not expressly prohibit private agreements waiving these provi-

---

[4]Although sections 1 and 6 were repealed (Ill. Rev. Stat. 1985, ch. 29, pars. 9, 14), the legislature enacted the "Consumer Deposit Security Act of 1987," effective January 1, 1988. (See Ill. Rev. Stat. 1987, ch. 29, par. 951 *et seq.*) The lease at issue in P&W's claim, and any leases that may become the subject of this class action, will not be affected by the new Act, however, because the new statute became effective on January 1, 1988, and Hertz sold its car leasing division on February 1, 1986. We do note, however, that the new Act, similar to the old law, requires that the security deposits be kept in separate segregated accounts clearly denoted in all records as security deposit accounts. The new Act also states:

"If the account is interest bearing, the party entitled to the deposit at the end of the lease shall be entitled to any and all interest accrued on the deposit. If the deposit amount is less than $150, such interest shall accrue to the account of the lessor." (Ill. Rev. Stat. 1987, ch. 29, par. 953(b).)

Additionally, the lessor must, within 30 to 60 days after termination of the lease, return the balance of the deposited funds with a statement of account to the lessee. Ill. Rev. Stat. 1987, ch. 29, par. 954.

sions, or expressly set forth any consequences for any failure to comply with these provisions, the statute is directory only, and not mandatory.

Apparently, no case has addressed this specific issue. But, the precise language of the statute here required, as P&W contends, that the deposits be kept in a separate account and that interest be paid on the amount of principal returned. Thus, the language in Hertz' lease with P&W is directly contrary to the leasing statute. Additionally, we do not agree with Hertz that since the leasing statute did not expressly provide sanctions for violations of the statute, those statutory requirements have no effect if they are not followed.

We find that the policy of the leasing statute is clear. It mandates that interest will be paid on security deposits and prohibits commingling of those deposits with other monies of the lessor. Hertz cannot be allowed to use *pro forma* contracts that blatantly disregard the mandate of the Illinois legislature, and also, in this case, the New York legislature, and thereby avoid the legislative mandate that seeks to protect parties in an inferior bargaining position in transactions such as these. Hertz, as a nationwide leasing company, is certainly in a superior bargaining position to the individual lessee with whom it contracts. There was no opportunity for the lessee here to meaningfully negotiate the terms of the lease. The sole input the lessee had was to set the duration and, perhaps, the price of the lease, but only to a limited extent. All of the remaining terms, including those which waived the right to interest and permitted commingling of the deposits, were set forth on the preprinted form and were required by the lessor. Hence, this attempt by Hertz in its form lease to waive the lessee's rights violates not only the letter, but also the spirit, of the statute that seeks to protect the lessee in this type of situation from these very provisions.

Consequently, the security deposit provisions of the lease which permitted Hertz to commingle the deposited funds and pay no interest on the deposit are improper and illegal and cannot be enforced. The terms of the contract must be read within the framework of the requirements of Illinois law, which is part of every contract in which Illinois law is applicable. Therefore, the provision waiving the lessee's right here to interest on the deposit and permitting commingling of the deposit is void. (See *Frederick v. Frederick* (1976), 44 Ill. App. 3d 578, 358 N.E.2d 398.) Accordingly, the trial court should have applied the provisions of the Illinois statute to this case and found these lease provisions to be without any effect.

Finally, P&W contends that the trial court erred when it de-

nied P&W's motion to dismiss Hertz' counterclaim, because the counterclaim did not properly allege, and Hertz could not prove, any specific, nonspeculative damages. P&W further claims that all of Hertz' evidentiary materials concerning damages were improper and that Hertz did not establish any right to damages, let alone prove any specific dollar amount of damages. Thus, P&W concludes the court's award of $6 in nominal damages to Hertz on its counterclaim was improper. Hertz, however, claims that the trial court erred in its judgment award of damages in favor of Hertz on the counterclaim for breach of contract and, specifically, in its calculation of the damages. Hertz argues that it was entitled to a greater award of damages, because it established a proper evidentiary basis for damages, and that this evidence reflected its actual damages and not merely nominal damages. For a party to be successful in a breach of contract claim, that party must not only allege the existence of damages, but must also prove, at the very least, that he has a right to damages. See *Feldstein v. Guinan* (1986), 148 Ill. App. 3d 610, 499 N.E.2d 535.

The trial court determined that the car was damaged in excess of ordinary wear and tear, but found that the evidentiary materials on damages were lacking in substance and awarded Hertz $1 per dent, for each of five dents, and $1 for the replaced tire, for a total of $6 in "nominal" damages on the counterclaim. At trial, only two witnesses testified, Mr. Wardrope, of P&W, and Mr. Rybicki, Hertz' vice-president in charge of leasing operations.

■■ After reviewing the record, we must agree with P&W's contentions. The evidence presented by Hertz as to the condition of the vehicle when it was returned was, at best, inconclusive. Although Mr. Rybicki testified that he was familiar with the documents and procedures followed by Hertz when leased vehicles are returned, there was absolutely no evidence presented by Hertz from which the court could ascertain the condition of the vehicle or the damages immediately after it was returned. Although the photographs of the vehicle in question showed damage, Mr. Rybicki could not state when the photographs were taken. In addition, the inspection report, which listed damages and their correlating dollar values, was admittedly prepared three weeks after the car was returned to Hertz. Furthermore, Mr. Rybicki admitted that he had no idea as to how the dollar values for damages or replacement parts on the report were ascertained. We find that since there was no foundation established for the report and the photographs, and since Mr. Rybicki could not testify as to any basis for the claimed damage to Hertz' vehicles, there

was no evidence presented in the trial court to support an award of any amount. Accordingly, the trial court's finding that the car was damaged in excess of ordinary wear and tear, and its award of $6 on Hertz' counterclaim, was in error.

Since no evidence was presented by Hertz to prove its right to damages, the counterclaim, as a whole, must fail. (See *Feldstein v. Guinan* (1986), 148 Ill. App. 3d 610, 499 N.E.2d 535.) The award of damages should have reflected the actual damages that Hertz proved had occurred. We find that Hertz did not properly prove any actual damages and conclude that the award of "nominal" damages was improper under these circumstances and, hence, must be reversed and Hertz' counterclaim dismissed. See *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 464 N.E.2d 657.

For all of the above reasons, we reverse the judgment of the trial court which denied certification of P&W's claim for a class action and remand the case to the trial court with directions to certify a class action on the following issues: (1) whether Hertz must legally pay interest on security deposits required of the lessees pursuant to Hertz' auto leases; (2) whether Hertz may properly commingle security deposits paid by its lessees with its other funds; and (3) whether Hertz can, without authorization, withhold the deposits at the termination of its leases in the absence of a written request for a return of the deposits from the lessees. Accordingly, the individual judgment for P&W in the amount of $451.61 is hereby vacated and the cause is remanded for further proceedings consistent with this opinion, so that the entire matter may proceed not as an individual action, but as a class action, on the issues set forth above. Additionally, we reverse the judgment of the trial court in favor of Hertz on its counterclaim and enter judgment here against Hertz on its counterclaim since we have found that the evidence presented at trial failed, as a matter of law, to support the counterclaim.

Reversed and remanded with directions.

CAMPBELL, P.J., and MANNING, J., concur.