JOSEPH SPINA *et al.*, Indiv. and as Representatives on Behalf of a Class of Similarly Situated Persons, *et al.*, Plaintiffs-Appellants, v. TOYOTA MOTOR CREDIT CORPORATION, Defendant-Appellee.

First District (3rd Division)    No. 1—97—1162

Opinion filed November 12, 1998.

Wolin & Rosen, Ltd., of Chicago (Jeffrey Shulman and Michael M. Tannen, of counsel), for appellants.

Michele Odorizzi and Victoria Collado, both of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE LEAVITT delivered the opinion of the court:

Plaintiffs Joseph and Barbara Spina and Rock-Tred Corporation leased automobiles from defendant Toyota Motor Credit Corporation (Toyota). Plaintiffs, on behalf of themselves and others similarly situated, filed a two-count complaint against Toyota, alleging Toyota's refusal to pay interest on plaintiffs' security deposits violated section 9—207 of the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/9—207(2)(c) (West 1996)) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 1996)). The chancery court granted Toyota's motion to dismiss (see 735 ILCS 5/2—615 (West 1996)), and plaintiffs now appeal.

■ Our review of the trial court's decision in this case is de novo. Vernon v. Schuster, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997). As did the trial court, we must ask whether the allegations of plaintiffs' complaint, when viewed in a light most favorable to plaintiffs, are sufficient to state a cause of action upon which relief can be granted. See 735 ILCS 5/2—615 (West 1996); Vernon, 179 Ill. 2d at 344. According to plaintiffs' complaint, on December 29, 1990, Rock-Tred entered into a three-year closed-end lease for a 1991 Lexus LS 400. The lease was immediately assigned to Toyota. As a requirement of the lease, Rock-Tred paid a refundable security deposit of $500. On August 1, 1992, the Spinas entered into a three-year closed-end lease for a 1992 Lexus

SC 300, and that lease was also immediately assigned to Toyota. The Spinas paid the same security deposit as Rock-Tred.

Regarding the security deposit, both leases contained the following provision:

"Security Deposit: We may use the security deposit to pay all amounts that you should pay under this Lease but do not. If you perform all of your obligations under this Lease, the security deposit will be returned to you at the end of the lease term."

According to plaintiffs' complaint, their security deposits "were mixed and commingled in accounts containing funds belonging to" Toyota, which had use of the funds throughout the term of the lease. Plaintiffs further alleged Toyota "utilized the security deposits, in a manner that causes the deposits to increase in value through accrued interest or other investment or permits defendant otherwise to profit or enjoy other economic benefits from its possession of such deposits ('profits')."

The first count of plaintiffs' complaint alleges Toyota's handling of their security deposits violates section 9—207(2) of the UCC. Section 9—207(2) provides:

"Unless otherwise agreed, when collateral is in the secured party's possession

* * *

(c) the secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation." 810 ILCS 5/9—207(2)(c) (West 1996).

Plaintiffs assert money given as a security deposit in connection with an automobile lease constitutes "collateral" creating a "security interest" within the meaning of the UCC. Under section 9—207, according to plaintiffs' complaint, Toyota was required either to remit any interest received on their security deposits or to apply that interest to reduce their obligations under the lease. The chancery court found section 9—207 inapplicable to automobile lease security deposits and dismissed plaintiffs' complaint.

As did the chancery court, we begin by noting Illinois has a long history of regulating security deposits through specific legislation. In 1921, Illinois adopted "An Act relating to money deposited or advanced under contracts for the use of the rental of personal property." See Ill. Rev. Stat. 1985, ch. 29, pars. 9 through 14 (Rental Act) (repealed by Pub. Act 85—733, § 6, eff. January 1, 1988). Section 1 of the Rental Act provided:

"In all contracts for the use or rental of personal property by the terms of which money is advanced or deposited as security *** , the

money so advanced shall be deposited at interest with a bank, trust company or savings and loan association ***, in trust for the use of the parties to such contract or agreement." Ill. Rev. Stat. 1985, ch. 29, par. 9.

In regard to interest earned on such security deposits, section 6 of the Rental Act provided:

"Any interest which accrues while the money advanced is so deposited shall be kept with the principal sum and shall be disposed of in the same manner as the principal sum in accordance with the provisions of this Act." Ill. Rev. Stat. 1985, ch. 29, par. 14.

■ In 1987, the Illinois legislature repealed the Rental Act and replaced it with the Consumer Deposit Security Act of 1987 (Ill. Rev. Stat. 1987, ch. 29, par. 951 *et seq.* (now 815 ILCS 165/1 *et seq.* (West 1996) (Deposit Act))). Under the new Deposit Act, "[a]ny lessor who requires a deposit from a lessee in connection with a consumer lease" may either (1) post a $10,000 surety bond with the Illinois Attorney General guaranteeing the refund of such security deposits, or (2) place the security deposit in an account with a bank, trust company, or a savings and loan association. See 815 ILCS 165/3 (West 1996). Only if a lessor chooses to deposit the funds in an interest-bearing account will "the party entitled to the deposit at the end of the lease" receive interest on the deposit at the termination of the lease; security deposits less than $150 are excluded from this requirement. 815 ILCS 165/3(b) (West 1996).

It is against this statutory backdrop that we must determine whether section 9—207 of the Illinois UCC was intended to apply to the security deposits at issue in this case. The chancery court found it did not, and we are aware of no rulings by Illinois courts on this issue. A number of federal courts, however, have addressed whether this particular section of the UCC, as enacted in this and other states, applies to automobile lease security deposits. See generally Chavez, *Automobile Lease Security Deposits: the Duty to Pay Interest* (hereinafter *Security Deposits*), 1047 PLI/Corp. 857, 865-81 (1998) (summarizing federal decisions in this area, including Judge Boharic's dismissal order in the present case). Inasmuch as both parties, as well as the trial court, relied upon several of these decisions, we will briefly summarize the various federal decisions in this area of the law.

In what one commentator has referred to as "one of those path-breaking decisions that brings light to the eyes of plaintiffs' lawyers and sends chills up the spines of defense counsel" (*Security Deposits*, 1047 PLI/Corp. at 865), the United States District Court for the Southern District of New York, in February 1996, found for consumers on their claim that they were entitled to interest on their automobile

lease security deposits under the UCC. See *Werbosky v. Ford Motor Credit Co.*, No. 95 Civ. 1876 (S.D.N.Y. February 22, 1996) (*Werbosky I*). In *Werbosky I*, Ford Credit conceded—"correctly" according to the district court—that the New York UCC applied to the security deposits at issue and that section 9—207 imposed "the duty to account to the debtor for any increases or profits." *Werbosky I*, slip op. at ___. In denying the defendant's motion to dismiss, the *Werbosky I* court concluded "Ford Credit ha[d] only two options with regard to the profits; it [could] either remit the interest to the lessee, or it [could] apply the interest to reduce the lessee's obligation under the lease." *Werbosky I*, slip op. at ___.

*Werbosky I* was followed by a decision from the United States District Court for the Northern District of Illinois in May 1996. See *Demitropoulos v. Bank One Milwaukee, N.A.*, 924 F. Supp. 894 (N.D. Ill. 1996) (*Demitropoulos II*). Applying Wisconsin's version of the UCC, the *Demitropoulos II* court found section 207 of that Code (identical to 810 ILCS 5/9—207 (West 1996)) applied to the plaintiffs' automobile lease security deposits. The Wisconsin Code was generally applicable to "any transaction (regardless of its form) which is intended to create a security interest in personal property." (Emphasis omitted.) *Demitropoulos II*, 924 F. Supp. at 896; see 810 ILCS 5/9—102(1)(a) (West 1996). The Wisconsin Code defined a "security interest" as "an interest in personal property *** which secures payment or performance of an obligation." *Demitropoulos II*, 924 F. Supp. at 897, quoting Wisc. Stat. § 401.20(37)(a) (West 1995); see 810 ILCS 5/1—201(37) (West 1996). Since "a reasonable inference [could] be drawn that the $550 deposit that Demitropoulos left with Bank One was designed to secure his obligations under the lease," the *Demitropoulos II* court, citing *Werbosky I*, concluded section 207 was applicable. *Demitropoulos II*, 924 F. Supp. at 897.

In January 1997, another district court in the Northern District of Illinois, this time applying Illinois law, found for automobile lessors on the security deposit interest issue. See *Wiskup v. Liberty Buick Co.*, 953 F. Supp. 958, 972 (N.D. Ill. 1997). As did the *Demitropoulos II* court, the *Wiskup* court began by noting the broad reach of article 9 of the UCC. *Wiskup*, 953 F. Supp. at 971; 810 ILCS 5/9—102(1)(a) (West 1996) (article 9 applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property"); 810 ILCS 5/1—201(37) (West 1996) (defining "security interest" as "an interest in personal property *** which secures payment or performance of an obligation"). Although the court in *Wiskup* found plaintiff's argument that security deposits for automobile leases fall within the definition of a "security interest" to be "strong," it never-

theless concluded there were "several obstacles" to the adoption of plaintiff's position. *Wiskup*, 953 F. Supp. at 972. First, no Illinois court, and few other courts, had found a security deposit is a security interest within the meaning of the UCC. Second, prior to the enactment of the UCC, the majority of courts, according to the *Wiskup* court, viewed the giving of a security deposit as creating a debt, which would be outside the reach of the UCC, as opposed to creating a security interest. *Wiskup*, 953 F. Supp. at 972; see also *Lawson v. Bank One Lexington*, 35 F. Supp. 2d 961, 965 (E.D. Ky. 1997) (finding automobile lessees' security deposits not subject to section 9—207 of the UCC on the basis that security deposit created a debtor/creditor relationship).

Finally, the court in *Wiskup* concluded the historical regulation of security deposits in Illinois—via legislation other than the UCC—precluded application of section 9—207 to automobile lease security deposits. The court noted the enactment of the Rental Act in 1921 and the fact that the passage of the UCC in Illinois (in 1961) had "no discernible effect" on the status of security deposits. *Wiskup*, 953 F. Supp. at 972. Looking to the one reported Illinois decision analyzing automobile lease security deposits, *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 530 N.E.2d 994 (1988), the court noted *Purcell*'s analysis of the deposit issue under the Rental Act and the fact no mention of the UCC was made in that decision, a fact which the *Wiskup* court characterized as "not accidental":

> "The [Rental Act] imposed different, and higher, duties on the lessor than the UCC. Unlike the UCC, it required lessors to segregate security deposits from their other funds, and imposed a positive duty on them to invest these funds at a profit. This quasi-trust relationship, with its corresponding rights and duties, was different in kind from the relationship between a secured party and a debtor, and was not implicated at all by the passage of 810 ILCS 5/9—207(2)." *Wiskup*, 953 F. Supp. at 972-73.

As do plaintiffs in the present case, the plaintiff in *Wiskup* argued the subsequently enacted Deposit Act was meant to coexist with the UCC in regulating security deposits. The district court flatly rejected this argument:

> "Plaintiff argues that the Consumer Deposit Security Act merely concerns itself with the return of security deposits, and only mentions interest as an incidental matter. The lessor's basic duty concerning interest earned from security deposits is still governed by the UCC. This argument is rather thin. Both UCC 9—207 and the Consumer Deposit Security Act are concerned with exactly the same issue: making sure that the party who gives property as security will receive it back after fulfilling his obligations. The

Consumer Deposit Security Act lays down specific rules for accomplishing this purpose in personal property leases involving security deposits. Moreover, the Act appears to be no less rigorous than the UCC in its requirements. We do not believe that the Illinois courts would confuse the issue by applying both the UCC and the Consumer Deposit Security Act to security deposits in automobile leases. Nor will we." *Wiskup*, 953 F. Supp. at 973.

See also *Tarnoff v. American Honda Finance Corp.*, No. 96C6923, slip op. at ___ (N.D. Ill. August 7, 1997) (following *Wiskup*, finding Deposit Act, not section 9—207 of the UCC, applied to security deposits at issue, and rejecting plaintiff's argument that the two were intended to coexist).

Later that same month, the district court that issued the *Demitropoulos II* decision reconsidered its earlier decision and again found in favor of the automobile lessees under Wisconsin law. See *Demitropoulos v. Bank One Milwaukee, N.A.*, 953 F. Supp. 974 (N.D. Ill. 1997) (*Demitropoulos III*). In reaffirming its earlier decision that automobile lease security deposits create "security interests" subject to section 9—207 of the UCC, the court relied upon several other federal decisions, including *Werbosky I*. See *Demitropoulos III*, 953 F. Supp. at 980; see also *In re Barr*, 180 B.R. 156, 160 (Bankr. N.D. Tex. 1995) (security deposit for electrical service created article 9 security interest); *In re Atlanta Times, Inc.*, 259 F. Supp. 820, 827 (N.D. Ga. 1966), *aff'd sub nom. Sanders v. National Acceptance Co.*, 383 F.2d 606 (5th Cir. 1967) (security deposit on equipment lease covered by section 9—207). The district court focused on, and ultimately rejected, *amicus curiae*'s argument that such deposits are not pledges of money, subject to article 9, but rather debts, which would be outside the scope of that article. The court based its conclusion upon the distinction between leases for real property and those for personal property, noting that every case cited in support of *amicus curiae*'s argument involved deposits given in connection with real property leases. Real property leases, the court reasoned, are specifically excluded from article 9 coverage. *Demitropoulos III*, 953 F. Supp. at 980-83.

The court in *Demitropoulos III* specifically rejected *Wiskup*'s analysis of the pledge/debt distinction as a basis for finding section 9—207 inapplicable but, nevertheless, concluded *Wiskup* was not relevant to its holding:

"Ultimately, however, *Wiskup* does not bear on our decision because it is based on an interpretation of Illinois, not Wisconsin law. The result in that case is a function of the interaction between the Illinois Consumer Deposit Security Act and the Illinois UCC, an issue we expressly decline to address." *Demitropoulos III*, 953 F. Supp. at 984 n.16.

Despite finding in the lessee's favor on the applicability of the UCC, the court entered summary judgment in Bank One's favor, since there was no evidence Bank One earned interest on the security deposit funds. *Demitropoulos III*, 953 F. Supp. at 985; see also *Martin v. Gold Key Lease, Inc.*, 988 F. Supp. 1101, 1104, 1105 n.1 (N.D. Ill. 1997) (granting summary judgment in defendant's favor, where parties agreed defendant "did not and does not receive any money *** from the security deposits paid by [plaintiffs] to the dealer-lessors," but suggesting, *in dicta*, that if the issue of section 9—207's applicability was reached, under Illinois law, *Wiskup*'s reasoning, and not that of *Werbosky I* and *Demitropoulos III*, would prevail).

While the *Wiskup* analysis was rejected in *Demitropoulos III*, it was followed in May 1997 by the United States District Court for the Eastern District of New York. See *Steinmetz v. Toyota Motor Credit Corp.*, 963 F. Supp 1294 (E.D.N.Y. 1997). In *Steinmetz*, the court noted New York, like Illinois, had enacted both section 9—207 of the UCC and a more specific statute expressly addressing the handling of security deposits. The court found the lessors' duties under section 9—207 to be "not entirely consistent" with those under the more specific state law governing deposits, leaving the court doubtful "the New York legislature intended such an arbitrary result." *Steinmetz*, 963 F. Supp. at 1304. The *Steinmetz* court simply "respectfully disagree[d]" with the holding in *Werbosky I* and distinguished *Demitropoulos II* and *III* on the basis that neither involved questions of conflicting state statutes—Wisconsin had no specific law potentially conflicting with the UCC. *Steinmetz*, 963 F. Supp. at 1304; see also *Brooks v. General Motors Acceptance Corp.*, No. 96CV3429, slip op. at ___ (N.D. Ill. March 16, 1998) (applying Illinois law and following *Wiskup*, distinguishing *Demitropoulos II* on this same basis).

Plaintiffs in the present case naturally point to the decisions in *Werbosky I* and *Demitropoulos* in support of their position on appeal. However, as the wave of other, more recent federal decisions just discussed demonstrates, the tide appears to have turned on plaintiffs' once-novel position, as adopted in *Werbosky I* and the *Demitropoulos* decisions. Assuming *arguendo* section 9—207 of the Illinois UCC can be interpreted as plaintiffs urge, namely, that money given as a security deposit in connection with an automobile lease may constitute "collateral" creating a "security interest" within the meaning of the UCC (see 810 ILCS 5/9—104 (West 1996) (listing transactions which are excluded from article 9, none of which are applicable here); 810 ILCS 5/9—304(1) (West 1996) (security interest in money can be perfected by the secured party's taking possession); *Wiskup*, 953 F. Supp. at 972 (characterizing as "strong" plaintiff's argument that

automobile lease security deposits fall squarely within the definition of a security interest); but *cf. Martin*, 988 F. Supp. at 1104 (accepting the same assumption even though "it gives us pause to realize plaintiffs' theory is, essentially that security deposits of $725 or $525 represent collateral for their lease obligations totalling more than $17,000 and $18,000, respectively")), we believe the chancery court correctly concluded *Werbosky I* and the *Demitropoulos* decisions are distinguishable from the present case.

In *Werbosky I*, Ford Credit *conceded* the applicability of the UCC, only later arguing, in a motion for reconsideration, that the more specific New York law governed. *Werbosky I*, slip op. at ___; *Steinmetz*, 963 F. Supp. at 1302; see also *Brooks*, slip op. at ___ (distinguishing *Werbosky I* on this basis). Moreover, whatever minimal support the *Werbosky I* decision lent to plaintiffs' position in this case was stripped away in *Werbosky II*. See *In re Ford Motor Credit Co. Motor Vehicle Lease Litigation*, No. 95 Civ. 1876(JSM), MDL 1160(JSM), slip op. at ___ (S.D.N.Y. April 1, 1998) (*Werbosky II*). *Werbosky II* involved multiple cases consolidated before the United States District Court for the Southern District of New York pursuant to orders of the panel on multidistrict litigation. *Werbosky II*, slip op. at ___. *Werbosky II* addressed only plaintiff Werbosky's motion for partial summary judgment and essentially overruled *Werbosky I* to the extent that decision held section 9—207 applicable to automobile lease security deposits under New York law. See *Werbosky II*, slip op. at ___ (following *Steinmetz*).

*Demitropoulos II* and *III* are also easily distinguishable from the instant case. In neither of those decisions was the court faced with arguably conflicting statutes governing the same subject matter. Wisconsin, unlike Illinois and New York, has enacted no legislation dealing specifically with security deposits, leaving the courts in that state free of statutory inhibitions when called upon to expansively interpret section 9—207 of the UCC. See *Steinmetz*, 963 F. Supp. at 1304 (distinguishing *Demitropoulos II* and following *Wiskup*, noting that "[i]n New York, as in Illinois, the state legislature has enacted both UCC § 9—207 and a more specific statute which expressly addresses the requirements imposed upon security deposits" and that the specific statute was "not entirely consistent" with the UCC); *Brooks*, slip op. at ___ (following *Wiskup* and *Tarnoff* in rejecting plaintiffs' argument that the Deposit Act "does not 'trump' the UCC, that the statutes were meant to coexist, and that the [Deposit Act] was intended to provide consumers with an additional layer of protection," finding plaintiffs' reliance on *Werbosky I* and *Demitropoulos III* to be unavailing); *Werbosky II*, slip op. at ___ (following *Steinmetz* and

*Wiskup* in holding section 9—207 inapplicable to consumers' security deposits on the basis of a more specific New York provision found to be inconsistent with the UCC).

■ Nevertheless, we do not find the three federal decisions applying Illinois law in analyzing this issue (*Wiskup*, *Tarnoff*, and *Brooks*) to be on point either. The Deposit Act, by its terms, applies only to leases of consumer goods where the total obligations under the lease do not exceed $25,000. See 815 ILCS 165/2 (West 1996) (Deposit Act is applicable to consumer leases "for the use of consumer goods for a period of time exceeding 4 months, for a total contractual obligation not exceeding $25,000 ***. *** The term consumer lease does not include a lease primarily for agricultural, business or commercial purposes or one made to an organization"). Plaintiffs correctly assert their leases in the present case are not subject to the dictates of the Deposit Act, unlike the plaintiffs' leases in *Wiskup*, *Tarnoff*, and *Brooks*. The consumer automobile leases in those cases were all valued at less than $25,000 (one lessee in *Brooks* owed more than $25,000 and did not pursue a claim under the Deposit Act), such that the applicability of the Deposit Act was never questioned and a direct conflict with plaintiffs' suggested interpretation of the UCC presented itself.

Here, in contrast, both leases are not subject to the Deposit Act. The Spinas entered a consumer lease for a Lexus, but its value totalled more than $25,000; Rock-Tred's lease was neither a consumer lease nor one with a total obligation of less than $25,000. Since the Deposit Act is not directly applicable to plaintiffs' leases, we reject Toyota's statutory construction argument that the Deposit Act, as a specific statutory provision governing security deposits, must control here over the more general statutory provision, section 9—207, which, it is urged, governs the same subject. See *People v. Villarreal*, 152 Ill. 2d 368, 379, 604 N.E.2d 923 (1992) ("It is a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied").

■ Yet another rule of statutory construction convinces us the chancery court was correct in following the district court's analysis in *Wiskup*. For although the Deposit Act and section 9—207 of the UCC do not clash on the facts of this case, there remain sufficient inconsistencies between the Deposit Act, the Rental Act, and plaintiffs' suggested interpretation of section 9—207 to convince us that our legislature, as recognized by the chancery court here and the district court in *Wiskup*, never envisioned application of that section of the UCC to automobile lease security deposits. Since the foremost principle

of statutory construction is to give effect to the intent of the legislature (*State of Illinois v. Mikusch*, 138 Ill. 2d 242, 247, 562 N.E.2d 168 (1990); *People v. Parker*, 123 Ill. 2d 204, 209, 526 N.E.2d 135 (1988)), we believe the chancery court correctly dismissed count I of plaintiffs' complaint.

Nothing in the language of section 9—207 would limit its application to security deposits not governed by the Deposit Act and, thus, to that extent the two statutes (again, if we accept plaintiffs' broad interpretation of section 9—207) are overlapping. Both would apply to those leases meeting the Deposit Act's definition of a "consumer lease." See 815 ILCS 165/2 (West 1996) (Deposit Act is applicable to consumer leases "for the use of consumer goods for a period of time exceeding 4 months, for a total contractual obligation not exceeding $25,000."). And, as Toyota points out, the two acts are inconsistent in how they require lessors to handle security deposits. Commingling security deposits is prohibited under the Deposit Act but apparently permitted under the UCC. Compare 815 ILCS 165/3(b) (West 1996) (if no bond is posted, security deposit shall be placed in an account and "[t]he account shall be in the name of the lessor and shall be clearly denoted on the records of the bank, trust company or savings and loan association as an account for the deposit of security deposits") with 810 ILCS 5/9—207(2)(d) (West 1996) (when collateral is in the secured party's possession "the secured party must keep the collateral identifiable but fungible collateral may be commingled").

Interest is also treated inconsistently by the two acts. Under the Deposit Act, if a lessee's security deposit is placed in an interest-bearing account, interest may accumulate, and, at the end of the lease, "the party entitled to the deposit" will receive all of the accrued interest. See 815 ILCS 165/3(b) (West 1996). In contrast, under section 9—207 a lessor cannot hold, as additional security, any money "received from the collateral"; he must either remit the interest to the lessee or reduce the lessee's obligation under the lease. See 810 ILCS 5/9—207(2)(c) (West 1996); *Werbosky I*, slip op. at ___. In fact, under the Deposit Act a lessor may circumvent any duty to pay interest on a security deposit entirely by choosing to post a surety bond with the Illinois Attorney General. See 815 ILCS 165/3(a) (West 1996); see also *Wiskup*, 953 F. Supp. at 972 (finding "thin" plaintiff's argument that the Deposit Act merely concerns itself with the return of security deposits, only mentioning interest as an incidental matter, and that the lessor's basic duty concerning interest on deposits is still governed by the UCC); *Martin*, 988 F. Supp. at 1105-06 (discussing the requirements of the Deposit Act, noting that if a bond is posted, a defendant is not required to maintain an account for security deposits,

"let alone an interest-bearing account"); *Tarnoff,* slip op. at ___ (noting that the Deposit Act requires compliance with either subsection (a) or (b) and that only subsection (b) requires the payment of interest).

■ Even were we to accept plaintiffs' suggestion that section 9—207 was intended to apply only to security deposits *not* covered by the Deposit Act—despite the absence of any language in either statute to that effect—the fact that section 9—207 was irreconcilably inconsistent with the Deposit Act's predecessor, the Rental Act, provides added confirmation that our legislature never intended what plaintiffs now urge. Under the Rental Act, a lessor was *required* to hold a security deposit for the leased property "at interest" and "in trust" in a bank, trust or savings and loan. See Ill. Rev. Stat. 1985, ch. 29, par. 9. Any interest that accrued was *required* to be kept "with the principal sum" and had to be disposed of "in the same manner as the principal sum." Ill. Rev. Stat. 1985, ch. 29, par. 14. As previously discussed, these requirements are entirely inconsistent with the UCC. Moreover, as Toyota notes, the rights and duties under section 9—207 can be varied by the parties (see 810 ILCS 5/9—207(2) (West 1996) ("Unless otherwise agreed ***")); in *Purcell & Wardrope,* this court found "void" the security deposit provisions of a lease which were contrary to the mandates of the Rental Act. *Purcell & Wardrope,* 175 Ill. App. 3d at 1082.

The Rental Act was enacted in 1921. The UCC was adopted in Illinois in 1961. The Rental Act was not replaced by the Deposit Act until 1987. It is presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of all previous enactments. *Mikusch,* 138 Ill. 2d at 247-48. It is further presumed that the legislature will not enact a law which completely contradicts a prior statute without an express repeal of it and that statutes that relate to the same subject are to be governed by one spirit and a single policy. *Mikusch,* 138 Ill. 2d at 247-48. Where there is an alleged conflict between two legislative enactments, this court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both enactments, where such a construction is reasonably possible. *Lily Lake Road Defenders v. County of McHenry,* 156 Ill. 2d 1, 9, 619 N.E.2d 137 (1993). Adopting plaintiffs' position entails accepting the fact that two utterly inconsistent statutes (the Rental Act and the UCC) governing the exact same subject matter were on the books in Illinois for some 16 years (1961-87). Since we are bound to adopt an interpretation of section 9—207 that gives effect to both it and other Illinois statutes governing security deposits, we must reject plaintiffs' proposed construction of that section. Moreover, as the chancery court

correctly ruled, interest statutes are in derogation of the common law and must be strictly construed; nothing is to be read into them by intendment or implication. *City of Springfield v. Allphin*, 82 Ill. 2d 571, 577, 413 N.E.2d 394 (1980).

Any doubt about the legislature's intention not to require lessors to pay interest on automobile lease security deposits is removed by section 45 of the Motor Vehicle Leasing Act (815 ILCS 636/1 *et seq.* (West 1996)), which became effective on January 1, 1997. Section 45(e) provides:

> "Any refundable security deposit or advance lease payment held by the holder may be retained by the holder or lessor and shall be credited against the lessee's early termination obligation. The amount of the security deposit or advance lease payment in excess of the amount of the lessee's early termination obligation shall be returned to the lessee. *The holder or lessor is not obligated to pay interest to the lessee on the security deposit.*" (Emphasis added.) 815 ILCS 636/45(e) (West 1996).

The chancery court properly dismissed count I of plaintiffs' complaint.

■ Plaintiffs' allegations in count II of their complaint, claiming violations of the Consumer Leasing Act (15 U.S.C. §§ 1667(a)(4), (a)(5), (a)(8) (1994)) and the Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 1996)), were heavily dependent upon their claim that they were entitled to interest on their security deposits under the UCC. These same allegations have been repeatedly rejected by the federal courts (see, *e.g., Steinmetz*, 963 F. Supp. at 1305; *Wiskup*, 953 F. Supp. at 964-66; *Gaydos v. Huntington National Bank*, 941 F. Supp. 669, 672-77 (N.D. Ohio 1996); *Tarnoff*, slip op. at ___; *Brooks*, slip op. at ___), and we reject them as well. In sum, it clearly appears that no set of facts could have been proved that would have entitled plaintiffs to recover in this case, and dismissal of their complaint was justified. *Vernon*, 179 Ill. 2d at 344.

Affirmed.

CAHILL, P.J., and BURKE, J., concur.