[No. A040268. First Dist., Div. Two. Aug 2, 1989.]

LOUIS KORENS et al., Plaintiffs and Appellants, v.
R. W. ZUKIN CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Edward D. Hume, Mary Margaret Bush and McCauley & Bush for Plaintiffs and Appellants.

Michael J. Brady, Charles M. Marx and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Defendants and Respondents.

**OPINION**

**PETERSON, J.**—Appellants challenge the trial court's decision to enter summary judgment against their claims in a class action. This case raises legal issues concerning the failure of respondents to pay interest on the security deposits of tenants who lease residential property. We conclude that the trial court properly granted summary judgment and, therefore, affirm.

## I. FACTS AND PROCEDURAL HISTORY

From 1971 until 1986 appellant Bess Korens (Korens) rented and occupied an apartment which was managed by respondent R.W. Zukin Corporation (Zukin) and owned by respondent Beach Park Associates (Beach Park). At the time the apartment was first rented in 1971, Korens and her husband, now deceased, paid to Zukin a security deposit of $152, pursuant to a written lease agreement. That agreement is silent on the question of whether interest is to be paid by Zukin upon the security deposit. When Korens moved to another address in 1986, Zukin refused to pay any interest on the security deposit. Korens brought this action as the representative of a purported class of former renters in Zukin-managed properties, alleging that the failure to pay interest on security deposits constituted: (1) an unfair business practice, (2) a breach of an implied term in the rental contract, (3) a "[t]ortious [b]reach of [c]ontract" and breach of an implied covenant of good faith and fair dealing, and (4) fraud. Korens also sought an accounting. The complaint sought "compensatory" and "general" damages, and punitive damages in the amount of $15 million.

After a few months of discovery, the case was certified by the trial court as a class action, for reasons which are not detailed in the trial court's order.

One month later Zukin and Beach Park moved for summary judgment, arguing that there was no legal or contractual duty to pay interest on the security deposit. They supported the motion with excerpts from Korens's deposition and a declaration of Zukin's president. Korens sought a delay in the hearing of the motion, on the grounds that discovery was not complete, and opposed the motion on the merits. Korens also filed written evidentiary objections to the declaration of Zukin's president, primarily disputing the competency of the declarant based upon lack of personal knowledge of the facts to which he attested.

The trial court granted the motion for summary judgment. After the hearing on the motion, Korens served Vincent De Dominico, the owner of another apartment building managed by Zukin, as a Doe defendant; and De Dominico demurred on the grounds that the trial court's ruling on summary judgment also absolved him of liability. The trial court sustained the demurrer. Korens timely appealed from both the summary judgment and the judgment of dismissal following the sustaining of the demurrer.

## II. DISCUSSION

■ In assessing the validity of an order granting summary judgment, we independently review the trial court's decision, ruling de novo on questions

of law and interpreting all material factual disputes against the moving party, which must establish that there are no triable issues of material fact and that it is entitled to judgment as a matter of law. (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31].) We conclude that Zukin is entitled to judgment as a matter of law.

 Although the subject of security deposits given in connection with the rental of residential properties has been extensively regulated by the Legislature (see Civ. Code, § 1950.5; *People* v. *Parkmerced Co.* (1988) 198 Cal.App.3d 683, 688 [244 Cal.Rptr. 22]), no provision of state law imposes the additional requirement that interest be paid on security deposits by landlords. Nor have appellants alleged that any local law required payment of such interest to them. Rather, appellants principally argue that, although there is no statute or case law precisely on point, the failure to pay such interest should be actionable because the handing over of the deposit creates, by operation of law, a trust or a pledge which thereby obligates the landlord to pay interest to the tenant; and the violation of this implied duty constitutes, inter alia, an unfair business practice actionable under Business and Professions Code section 17200 et seq.

We disagree, because we do not believe that we can properly create by implication a law requiring the payment of interest on security deposits when the Legislature has declined to do so. (See Comment, *Interest On Security Deposits—Benefit or Burden To Tenant?* (1978) 26 UCLA L.Rev. 396, 399-400 (hereafter *Interest on Security Deposits*) ["Absent a statute or specific contractual agreement to the contrary, the courts are inclined to infer that the landlord may use the [security deposit] funds as he chooses. . . . [¶] [T]he payment of interest is not a necessary incident of the [debtor-creditor] relationship. The landlord has no duty to accumulate interest for the tenant, and any interest earned may be retained by the landlord."] [Fns. omitted.].)

Korens relies upon her interpretation of the first sentence of Civil Code section 1950.5, subdivision (d), which provides in its entirety as follows: "Any security shall be held by the landlord for the tenant who is party to the lease or agreement. The claim of a tenant to the security shall be prior to the claim of any creditor of the landlord." By isolating the phrase "shall be held by the landlord for the tenant," Korens suggests that the receipt of a security deposit under the terms of the statute creates "a trust relationship"; and that the landlord is obligated by trust law to turn over the proceeds earned from the "trust" property, i.e., interest, to the tenant at the conclusion of the lease. However, we believe that the statute must be read and interpreted as a whole. The next sentence after that relied upon by Korens

indicates that the purpose of both sentences of section 1950.5, subdivision (d), is not to create a trust or pledge relationship in order to allow tenants to recover interest, but instead to create a statutory protection for tenants' security from claims by third parties who would have unrelated claims against the landlord. (See 4 Miller & Starr, Current Law of Cal. Real Estate (1977) § 27:56, p. 314 ["The obligation for the return of the deposit is a personal liability of the landlord to the tenant and *no other person* can make any claim to the deposits held by the landlord. The payment of deposits by a tenant creates a *debtor-creditor* relationship between the tenant and the person who receives the deposit." Fn. omitted, italics added.].)

Further, it seems unlikely that the Legislature intended, without saying so, to modify the ordinary presumption that only a debtor-creditor relationship is created in order to create an anomalous "trust" relationship in which the tenant, as settlor of the "trust," and the landlord, as trustee of the "trust," have an inherent conflict of interest over the disposition of the res of the "trust." (See *Interest on Security Deposits, supra,* 26 UCLA L.Rev. at p. 401, fn. 32 ["The main problem in declaring [a landlord's holding of a tenant's security deposit to be] a trust relationship is that the landlord with a fiduciary duty to his tenant also has an interest in the security deposit himself; though the deposit remains the tenant's property during tenancy, it becomes the landlord's property should the tenant default."]; cf. Rest.2d Trusts, § 12, p. 35 ["A debt is not a trust."] & com. i, pp. 39-41 ["A common situation involving this question arises where a tenant makes a deposit of money with his landlord as security . . . ."].)

Simply put, we think that it is highly unlikely that the Legislature would undertake a convoluted detour through the law of trusts or pledges, in order to require that interest be paid on security deposits, when it could achieve that result more directly by a simple statutory mandate speaking specifically to the issue of interest. The Legislature has in fact repeatedly refused to enact proposed legislation which would explicitly make interest payable on tenants' security deposits.[1] We decline the invitation to do that which the Legislature has left undone.

The cases cited by Korens in support of her "trust" or "pledge" theories are inapposite. In *Boteler* v. *Koulouris* (1934) 1 Cal.App.2d 566 [37 P.2d

---

[1] See, e.g., Assembly Bill No. 1410, 1971 Regular Session, section 1; Assembly Bill No. 1332, 1973-1974 Regular Session, section 1; Assembly Bill No. 1885, 1973-1974 Regular Session, section 1; Senate Bill No. 313, 1975-1976 Regular Session, section 2; Assembly Bill No. 3719, 1975-1976 Regular Session, section 1; Assembly Bill No. 2466, 1977-1978 Regular Session, section 1; Assembly Bill No. 293, 1979-1980 Regular Session, section 2; Assembly Bill No. 153, 1981-1982 Regular Session, section 1; Assembly Bill No. 3746, 1981-1982 Regular Session, section 1; Senate Bill No. 113, 1983-1984 Regular Session, section 1; Assembly Bill No. 1555, 1983-1984 Regular Session, section 2; Assembly Bill No. 2660, 1987-1988 Regular Session, sections 1, 2.

136]; and *Green* v. *Frahm* (1917) 176 Cal. 259 [168 P. 114], the courts dealt with leases which provided "liquidated damages" for any failures by the lessee. The courts employed trust and pledge principles, *prior to the enactment of Civil Code section 1950.5, subdivision (d),* in order to decide whether (1) certain rent payments constituted voidable preferences under bankruptcy law (*Boteler* v. *Koulouris, supra,* 1 Cal.App.2d at pp. 567-568), or (2) whether such liquidated damages provided in connection with the alleged construction of a house of prostitution might constitute an illegal forfeiture. (*Green* v. *Frahm, supra,* 176 Cal. at pp. 261-263.) In *Thompson* v. *Swiryn* (1950) 95 Cal.App.2d 619, 629 [213 P.2d 740], the court simply affirmed a jury verdict that a sum handed over to the landlord upon the execution of a lease was a security deposit rather than a bonus paid for execution of the lease. (See also *Ingram* v. *Pantages* (1927) 86 Cal.App. 41 [260 P. 395] [This court (Div. 2) held that interest should not be recoverable *by the landlord* on a deposit for liquidated damages in the event that the tenant failed to exercise an option to purchase property, because the deposit would have belonged to the defaulting tenant until the date when he failed to exercise his option to purchase.].) None of these cases discusses the payment of interest on security deposits given in connection with the leasing of residential property under the present statutory scheme, which does not require payment of interest on security deposits. In the one case we have found which discusses the issue of tenants' security deposits under Civil Code section 1950.5, the court rejected the argument that a trust relationship was created. (*Federated Mortgage Investors* v. *American Sav. & Loan Assn.* (1975) 47 Cal. App.3d 917, 921-922 [121 Cal.Rptr. 137] ["In our view, that document [the security deposit receipt] creates a debtor/creditor relationship, not a trust relationship."].)

■ Since it was not unlawful for Zukin to refuse to pay interest on security deposits under existing law, the trial court properly ruled as a matter of law that Zukin had no such duty, and properly granted summary judgment on Korens's claim that Zukin had committed an unfair business practice.

Our disposition does not require us to address the issue of whether Korens could obtain relief on the unfair business practice claim for the general and compensatory damages she sought, as opposed to the remedies of injunction and restitution. (See *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1095-1096 [257 Cal.Rptr. 655] [expressing the view that only restitution and an injunction are available as remedies here].) Likewise, while a class action should not be routinely certified absent some reason to believe that a class action would be a beneficial procedural mechanism for the resolution of the dispute, the propriety of the class certification is not an issue in this appeal.

We also note it is not entirely clear that a ruling that interest must be paid on security deposits would actually favor tenants' interests in general, as opposed to the interests of the purported class representative. One commentator has employed economic analysis to suggest that a requirement landlords pay interest on security deposits would have the effect of harming the interests of tenants in general, because landlords would simply increase future rents if they were required to pay interest. "[T]he absence of interest payments [on security deposits] may ultimately benefit the tenant, since rental increases to cover the landlord's additional costs would likely exceed the interest the tenant receives." (*Interest on Security Deposits, supra,* 26 UCLA L.Rev. at pp. 402-403, see also pp. 406-413.) We do not know whether this analysis is correct; but the fact that reasonable minds obviously could differ on the desirability of the present statutory scheme to the purported class, and to tenants in general, reinforces our conclusion: Any requirement that interest be paid should be enacted explicitly by the Legislature, not developed through doctrinal manipulation by the courts.

Summary judgment was also proper on Korens's other claims. All these claims fail, for the same reasons we have concluded that Korens's unfair business practice claim must fail.

The evidence before the trial court on the issue of an alleged implied contract to pay interest consisted of the written contract, which does not provide for the payment of such interest; and Korens's deposition testimony, in which she admitted that there was never any discussion of whether the security deposit would earn interest. While an implied-in-fact contract or conceivably an explicit oral contract requiring Zukin to pay interest could arise in certain circumstances, such as from statements by Zukin's agents, Korens's concessions that the subject was never discussed, and the absence of any other evidence, rendered summary judgment proper. Further, there was no evidence of circumstances under which an implied contract right or implied covenant or fiduciary duty or misrepresentation concerning the payment of interest could have arisen. Therefore, summary judgment was also proper on Korens's claims that Zukin committed a "[t]ortious [b]reach of [c]ontract" or breached an implied covenant in the lease, or committed "fraud." Finally, no issue requiring trial was raised by Korens's claim for an "accounting" of interest allegedly payable on her deposit under the terms of an "oral declaration of trust," for the reasons that there was no evidence such a trust existed and no such interest was payable.

■ Korens also argues that summary judgment was improper because discovery remained to be done. However, Korens's counsel's declaration and briefs do not explain how there could be any discovery *relevant to the*

*issues on summary judgment* which remained to be done. Rather, the contemplated discovery appears to have been intended to acquire the names of other potential defendants and class members, which would not have been relevant to the issues on summary judgment. Thus, summary judgment was not premature.

■ Korens also argues that the trial court erred in failing to rule on her objections to the declaration of Zukin's president, based principally upon his alleged lack of personal knowledge of the affairs of his company. Even if the entire declaration in question should have been stricken (and we do not imply that it necessarily should have been), summary judgment was still proper based upon the other relevant evidence before the court, which consisted of deposition testimony of Korens and the parties' written agreement.

Also before us is the judgment of dismissal following the sustaining of the demurrer of De Dominico, who was added as a defendant by Korens after the trial court announced its intention to grant summary judgment on Korens's claims. Although the parties and the trial court have treated De Dominico's motion as a demurrer, it should perhaps have been treated as a successive summary judgment motion since in essence it asked the court to consider the same evidence it had considered on the first motion. In any event, while the prior summary judgment may not have been res judicata in the trial court because it had not yet been upheld on appeal, the trial court's ruling has now been upheld; and Korens cannot prevail as a matter of law. Here, since Zukin was not liable for failing to pay interest on a security deposit, neither was De Dominico, who was alleged to be a principal for whom Zukin acted.

We note in passing Korens stated in her declaration opposing summary judgment that, quite apart from the matter of interest on the security deposit, the security deposit itself had not been returned to her. However, each cause of action of Korens's complaint charged only that Zukin's retention of the "interest earned" on the security deposit was wrongful. ■ Since Zukin was entitled to retain the security deposit under certain circumstances at the conclusion of Korens's tenancy, and since Korens did not charge in her complaint that retention of the deposit was wrongful,[2] no

---

[2] There is some irony in the fact that Korens apparently did not challenge the retention of the deposit itself in her complaint, only the retention of the interest on it. While we express no considered judgment, it would appear arguable that if Zukin were entitled to retain the deposit itself it would also be entitled to retain the interest on the deposit, even under Korens's theory of the case.

At oral argument on this appeal, appellant sought to raise the issue of the retention of the deposit itself as a possible fact precluding summary judgment. However, appellant did not allege below that retention of the deposit itself was wrongful and did not seek to amend her

dispute of fact existed precluding summary judgment on the claims Korens asserted in her complaint.

In summary, we hold that, unless or until the Legislature requires otherwise, there is no obligation implied by law for a landlord to pay interest on a tenant's security deposit.[3]

## III. DISPOSITION

The judgments are affirmed.

Smith, Acting P. J., and Benson, J., concurred.

A petition for a rehearing was denied August 28, 1989, and appellants' petition for review by the Supreme Court was denied October 25, 1989.

---

complaint to assert such a claim. It is also obvious that appellant knew whether the deposit was retained and did not need discovery to ascertain that fact. We will not address for the first time on appeal the belated claim that retention of the deposit itself was wrongful, when that factual claim was never made below in appellant's pleadings. (*First Interstate Bank* v. *State of California* (1987) 197 Cal.App.3d 627, 635-636 [243 Cal.Rptr. 8].)

We reject two additional arguments Korens asserts by way of petition for rehearing. First, Korens argues that a type of trust should also be imposed because Zukin in fact used the interest on the security deposit for its own corporate purposes. However, that is what the current state law allows. Second, Korens argues that the extensive regulation of security deposits under Civil Code section 1950.5, subdivision (e), which provides that "The landlord may claim of the security [deposit] only those amounts as are reasonably necessary . . . ." to cure tenant defaults and to repair and clean the premises, counsels imposition of the additional requirement that interest be paid. However, the extensive regulation of security deposits in this context only fortifies our conclusion that, if the Legislature had intended to impose the additional requirement that interest be paid, the Legislature would have so provided. We do not mean in any way to belittle Korens's position, which is a forceful and principled argument for the extension of existing law. We simply hold that in this context any extension of the applicable law must come through legislation.

[3] At least one commentator appears to advocate a change in the law which the Legislature has not seen fit to make. "At the present time there is no law which *requires* the landlord to pay interest on the security deposit. Since the landlord receives the use of the money, however, . . . the landlord *should* be liable for the interest . . . ." (4 Miller & Starr, *op. cit. supra* (1987 supp.) § 27:56, p. 343, italics added.)