Gino MARTIN, individually and as representative on behalf of a class of similarly situated persons, and Dan Moran and Rock–Tred Corporation, an Illinois corporation, individually and on behalf of a class of similarly situated persons, Plaintiffs,

v.

GOLD KEY LEASE, INC., a corporation, Defendant.

No. 96 C 3411.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 8, 1997.

Jeffrey A. Schulman, Philip S. Wolin, Wolin & Rosen, Ltd., Chicago, IL, for Plaintiffs.

Gary Michael Elden, David E. Schoenfeld, Grippo & Elden, Clark Murray Stalker, AT&T Corp., Chicago, IL, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendant Gold Key Lease, Inc. for summary judgment on the complaint of plaintiffs Gino Martin, Dan Moran, and Rock–Tred Corporation.

## I. BACKGROUND

The plaintiffs in this case leased vehicles from dealerships in Orland Hills, and Skokie, Illinois. The defendant subsequently purchased the leases from those dealerships. Plaintiffs now bring a four-count complaint claiming that the lessor under these agreements is required to pay interest or other profits on a lessee's security deposit under the automobile leases. The complaint seeks recovery of interest and profits under Illinois' Uniform Commercial Code ("UCC"), 810 ILCS 5/9–207, and the Illinois Consumer Deposit Security Act ("CDSA"), 815 ILCS 165/1 *et seq.*, and alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("DTPA"), 815 ILCS 505/1 *et seq.*, and the federal Consumer Leasing Act, 15 U.S.C. § 1667(a). Defendant moves for summary judgment on these claims, arguing that the UCC section 9–207 does not apply to lease security deposits, and that plaintiffs do not have claims under CDSA, DTPA, or the Consumer Leasing Act.

### A. Facts

There are no disputed facts in this case, and the parties have filed an agreed statement of facts pursuant to Local Rule 12(m). Accordingly, we draw our factual recitation from that submission. Plaintiffs leased their vehicles from auto dealers, not from the defendant. Plaintiff Martin cannot recall whether he paid a security deposit when he leased his vehicle, and does not have a canceled check evincing such a payment. The dealer paperwork, however, suggests that he did. In any event, if plaintiffs paid any security deposit, they paid it to the dealers. Plaintiff Martin's lease was for 24 months with a total obligation over that time of $17,067.60; his security deposit was $725. (*Stipulated Rule 12(m) Statement,* Ex. H). Plaintiff Rock–Tred had a 36–month lease with a total obligation of $18,183.24; its security deposit was $525. (*Id.,* ¶ 41; Ex. I).

Defendant—in the business of purchasing such leases—purchased the plaintiffs' leases from those dealers. The purchase price defendant paid was reduced by an amount equivalent to the security deposit paid to the dealer. As assignee of the lease, defendant assumes the obligation to pay the lessee, or

plaintiffs here, an amount equivalent to the security deposit at the lease's termination. It does not pay any interest on the amount. Defendant carries the amount as a liability on its books, and does not profit directly from the security deposits. Arguably, though, the discount in the amount of the security deposit has an indirect effect on defendant's cash and borrowing position. Defendant has posted a $10,000 bond with the Illinois Attorney General's office, as required under CDSA. 815 ILCS 165/1 *et seq.*

### B. *Parties' Position*

Plaintiffs' complaint is, essentially, that the defendant was required to invest the security deposits in an interest bearing account and then remit the interest earned to plaintiffs at the end of the lease. Plaintiffs trace this requirement to Illinois' UCC and the CSDA. Defendants argue that neither of these provisions applies to obligate them to earn and remit interest on security deposits.

### II. *ANALYSIS*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court does not evaluate the weight of the evidence to determine the truth of a matter, but instead determines whether there is a genuine issue of triable fact as to the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A summary judgment proceeding is not a vehicle for the resolution of factual disputes. *Id.* at 249–50, 106 S.Ct. at 2511. Neither may the court assume the role of advocate for one side or the other, scouring the record for evidence to support their positions. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1116 n. 9 (7th Cir.1994); *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir.1990) (*citing Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989)).

The party moving for summary judgment has the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If there is a doubt as to the existence of a material fact, that doubt must be resolved in favor of the nonmoving party and summary judgment should be denied. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). Conversely, summary judgment must be entered against a party who fails to show that the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. The nonmoving party must do more than demonstrate some "metaphysical doubt" as to the existence of a material fact, and a mere scintilla of evidence in support of the nonmoving party's position will be insufficient. *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 772 (7th Cir.1997) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986)). With these concepts in mind, we address the parties' positions in this case.

### A. *UCC Section 9–207*

Plaintiffs bring Count I of their complaint under Section 9–207(2)(c) of Illinois' UCC. The threshold issue the parties present is whether Illinois' UCC applies to security deposits on automobile leases. Section 9–102(1) of the UCC state that it "applies to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures." 810 ILCS 5/9–102(1)(a). The UCC defines a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." 810 ILCS 5/1–201(37). Plaintiffs argue that their automobile leases are "transactions" in which they deposited money to secure payment of the amounts due under their leases. (*Plaintiffs' Memorandum in Opposition*, at 4–5). They base their claims on the theory that their security deposits are "security interests," and therefore "collateral" under the UCC. (*Id.* at 5). As collateral, Plaintiffs

argue that the deposits would be subject to section 9–207 of the UCC. That section provides, in pertinent part:

(2) Unless otherwise agreed, when collateral is in the secured party's possession

* * *

(c) the secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligations;

810 ILCS 5/9–207(2)(c). This is the basis, then, of plaintiffs' claim that defendant is obligated to pay plaintiffs interest earned on the security deposit. While it gives us pause to realize plaintiffs' theory is, essentially that security deposits of $725 or $525 represent collateral for their lease obligations totalling more than $17,000 and $18,000, respectively, we will nevertheless proceed with a more thorough analysis.

Before we consider whether the UCC applies to automobile lease security deposits, however, we note that, even assuming the UCC were applicable, the record here would fail to demonstrate that defendant violated section 9–207(2)(c). Section 9–207(2)(c) does not *require* a secured party to invest collateral to earn interest. It merely states that money received from collateral must be remitted to the debtor or applied to reduce the secured obligation. In this case, defendant never had physical possession of what plaintiffs claim is the collateral—their security deposits. An amount equal to it was discounted from the price defendants paid for the leases, and the amount was entered as a debt on defendant's books. The parties agree that defendant "did not and does not receive any money ... from the security deposits paid by the lessors to the dealer-lessors." (*Stipulated Rule 12(m) Statement,* ¶ 19). All UCC 9–207(c)(2) requires is that "money ... received, unless remitted to the debtor, shall be applied in reduction of the secured obligation." As the parties agree defendant received no money from the purported collateral, there can be no violation of this provision.

Plaintiffs urge the court to apply section 9–207(c)(2) because "the reduction of the purchase price paid by [defendant] for a lease in the amount equivalent to the security deposit has an indirect effect upon [defendant's] cash and borrowing position." (*Plaintiffs' Memorandum in Opposition,* at 7). According to plaintiffs, this "indirect effect" raises a genuine issue as whether defendant earns interest on security deposits. (*Id.* at 6–7). Plaintiffs offer no support for this theory, and we cannot accept their argument.

First, an "indirect effect on cash and borrowing" is not what the section covers; it covers *money received* from collateral. Once again, there is simply no evidence in the record to demonstrate that defendant received any money from the security deposits. Second, there is no evidence as to what this "indirect effect" constituted and there is certainly no evidence defendants received interest from security deposits. This is a case where plaintiffs hope to stave off summary judgment with a "metaphysical doubt" or a "mere scintilla of evidence," and such a tactic is insufficient. *Rednour,* 108 F.3d at 768.

Finally, we note that both parties refer to *Demitropoulos v. Bank One Milwaukee, N.A.,* 953 F.Supp. 974 (N.D.Ill.1997). There, the court considered an argument similar to that of plaintiffs' herein regarding the application of Wisconsin's version of section 9–207(2)(c):

[Plaintiff] argues that [defendant] did earn interest on the security deposit funds, and, as such, "received" from the collateral "money" that must be remitted to the class members or used to reduce their obligations. [Plaintiff] concedes that the [defendant] did not place the deposit amounts in an interest-bearing account. He focuses instead on the fact that ... [defendant] had nearly $6 million in security deposit funds available for use ... plaintiff maintains that this increase in operating funds alleviated the [defendant's] need to borrow ... and enabled [defendant] to collect interest by lending its excess funds to other banks. [Plaintiff] speculates that any interest saved from not having to borrow or earned from lending may be "money" that [defendant] "received" from the collateral

and must pass on to the lessees. But [plaintiff] offers no real evidence in support of this supposition.

We find that § 409.207(2)(c) cannot sustain such a strained reading. Furthermore, even if it could, the record before us does not permit a rational trier of fact to conclude that [defendant] saved or made money using the security deposit funds. 953 F.Supp. at 984–85. Thus, the court in *Demitropoulos* could not accept an argument similar to the one advances here. According to plaintiff, however, we need not follow *Demitropoulos* because the record before this court is much less developed and the "indirect effect" that remains undefined herein "may be a profit to [defendant] and that would surely supply the evidence that [the *Demitropoulos* ] court did not have before [it]. (*Plaintiffs' Memorandum in Opposition,* at 7). The time for plaintiffs to develop the record as to this "indirect effect," however, has come and gone, and their supposition is just as speculative as that presented in *Demitropoulos.* Furthermore, while the *Demitropoulos* court stated that there was no evidence before it to support such a theory, it held, definitively the "having the use of the security deposits to avoid borrowing or to increase lending on certain days" did *not* constitute "money ... received" from collateral. 953 F.Supp. at 985.

In summary, plaintiffs characterize the discount defendant received on the price of automobile leases as collateral and hope to somehow prove that defendant received money from that collateral. While it is difficult to accept plaintiffs' theory in the abstract, it is even more difficult to accept in the concrete As this is a summary judgment proceeding, it was up to plaintiffs to submit something concrete to prove their claims. As they have not, defendant is entitled to summary judgment as to Count I.[1]

**B.** *Consumer Deposit Security Act*

Plaintiffs bring Count II of their complaint under the Consumer Deposit Security Act ("CDSA"), 815 ILCS 165/1 *et seq.* In pertinent part, the CDSA provides:

3. Any lessor who requires a deposit from a lessee in connection with a consumer lease shall *either:*

(a) have on file with the Illinois Attorney General a surety bond ... in the amount of $10,000. The bond shall be in favor of the State of Illinois for the benefit of lessor's lessees, and shall secure payment by lessor of all amounts due to lessees under Sections 4 and 5 of this Act; *or*

(b) place the full amount of the deposit received in an account ... The account shall be in the name of the lessor and shall clearly be denoted ... as an account for the deposit of security deposits... If the account is interest bearing, the party entitled to the deposit at the end of the lease shall be entitled to any and all interest accrued on the deposit.

\* \* \*

815 ILCS 165/3 (emphasis added). Section 4 requires the lessor, at the end of the lease, to provide the lessee with a statement of the lessee's account and a check in the amount of any refund due the lessee. 815 ILCS 165/4. Section 5 deals with amount of recovery in an action by a lessee to recover amounts due under section 4.

Thus, the CDSA gives the lessor the option of posting a bond or maintaining an account dedicated to security deposits. *Wiskup v. Liberty Buick Co., Inc.,* 953 F.Supp. 958, 973 (N.D.Ill.1997). In this case, there is no dispute that defendant proceeded under subsection (a) of section 165/3, by posting a $10,000 bond with the attorney general. As a result, defendant was not required to maintain an

---

1. While we do not reach the issue, we note defendant argues that section 9–207 is inapplicable to lease security deposits, and Illinois case law supports this position. In *Wiskup v. Liberty Buick Co.,* 953 F.Supp. 958 (N.D.Ill.1997), the court considered whether security deposits on personal property come within the scope of section 9–207, and found they did not. *Id.* at 972–73. Plaintiffs are unable to marshal any Illinois cases to the contrary, and rely on *Demitropoulos,* 953 F.Supp. at 980, which found Wisconsin's section 9–207 did apply to security deposits on automobile leases. That decision, obviously, was not an analysis of Illinois law, and was based in part on *Werbosky v. Ford Motor Credit Co.,* 1996 WL 76133, at *1 (S.D.N.Y.1996), in which the defendant *conceded* the question of the UCC's applicability.

account for security deposits, let alone an interest-bearing account. Defendants, then, had no obligation to invest plaintiffs' security deposits—which they never actually received—and remit interest earned to the plaintiffs. Accordingly, defendants are entitled to summary judgment on Count II.

### C. *Disclosure Provisions*

 Plaintiffs bring Counts III and IV under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and the federal Consumer Leasing Act, 15 U.S.C. § 1667(a). Both of these counts charge defendant with failing to disclose its earning and retention of profits derived from plaintiffs' security deposits. (*Complaint,* ¶¶ 46, 52). As already discussed, however, plaintiffs have failed to demonstrate the existence of a material issue of fact regarding whether defendant earned, or was required to earn, any interest or profits on plaintiffs' security deposits. Therefore, there was nothing for defendants to disclose and they are entitled to summary judgment as to Counts III and IV.

### III. *CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment is hereby GRANTED.