KNIGHT, Appellant,

v.

FORD MOTOR CREDIT COMPANY, Appellee.

[Cite as *Knight v. Ford Motor Credit Co.* (2000), 135 Ohio App.3d 732.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75593.

Decided Jan. 3, 2000.

*Hermann, Cahn & Schneider, Anthony J. Hartman, Jay H. Salamon, Romney B. Cullers,* for appellant.

*Thompson, Hine & Flory, Brett K. Bacon* and *Donald P. Screen,* for appellee.

PORTER, Administrative Judge.

Plaintiff-appellant, Michael A. Knight, appeals from the summary judgment entered by the trial court in favor of defendant-appellee, Ford Motor Credit Company, in plaintiff's purported class action suit to recover additional sums on a security deposit pursuant to R.C. 1309.18(B) [UCC 9–207] on the lease of a motor vehicle. Plaintiff also claims that the trial court should have entered summary judgment in his favor on the issue in question. We find no error and affirm.

In spring 1995, plaintiff leased a 1995 Ford Windstar from Ed Mullinax Ford in Amherst, Ohio. A refundable security deposit was recorded on the Lease Agreement with Mullinax. Plaintiff did not pay cash or issue a check as the security deposit in the traditional sense. Rather, he was given credit at that time for $225 because of the value represented by his trade-in vehicle. Mullinax subsequently transferred the Lease Agreement to defendant Ford Credit.

Ford Credit does not deal directly with the consumers who lease automobiles from Ford dealers. At the time of the execution of the lease, the lessee pays the local dealer a lump sum that includes an amount for a security deposit that according to the lease terms, will be returned to the lessee at the termination of the lease if the automobile is returned in good condition and other conditions are met. The local dealer then assigns the lease to Ford Credit, which pays the dealer the cost of the car less the security deposit and the first month lease payment. The security deposit itself is never transferred to Ford Credit.

Ford Credit in turn lists the security deposit as a liability on its books and adds the amount to its accounts payable account for security deposits.

Plaintiff contends that Ford Credit, pursuant to R.C. 1309.18(B) [UCC 9–207], must credit the lessees with any "increase profit" earned on the security deposits. R.C. 1309.18(B) states as follows:

"(B) Unless otherwise agreed, when collateral is in the secured party's possession:

" * * *

"(3) The secured party may hold as additional security any increase or profits, except money, received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation."

Specifically, plaintiff contends that by only paying the Ford dealer the amount of the actual cost of the car less the security deposit, Ford Credit does not have to borrow as much money to finance the lease deals and therefore derives a profit from the transaction. Plaintiff contends that lessees should be reimbursed the amount of this profit. Ford Credit claims that R.C. 1309.18(B) does not apply to automobile leases and that because it never actually possessed the security deposit, it never received the money under the statute.

■ Thus, the sole issue between the parties is whether the statute has application to the security deposit for which Ford Credit gave Mullinax credit in purchasing the Lease Agreement.

Plaintiff's sole assignment of error states as follows:

"I. The trial court erred in granting Ford Motor Credit Company's motion for summary judgment and denying plaintiff's motion for partial summary judgment."

Appellate review of summary judgments is *de novo*. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245; *Zemcik v. La Pine Truck Sales & Equip.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860, 863–864. The Ohio Supreme Court recently restated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–70, 696 N.E.2d 201, 203–204:

"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138, 139–140.

It is plaintiff's contention that, pursuant to R.C. 1309.18(B) [UCC 9–207], Ford Credit was required to remit to class members any "increase or profit" earned on their security deposits. Plaintiff further alleges that indeed "Ford Credit earns

an increase or profit from the security deposits it requires of its lessees," which Ford Credit has allegedly failed to remit to class members or apply in reduction of their "secured obligations."

Ford Credit argues that summary judgment was properly entered in its favor as: (1) R.C. 1309.18 [UCC 9–207] as a matter of law does not apply to automobile lease security deposits (because *e.g.*, such deposits do not constitute collateral within the meaning of the section or do not create security interests); (2) lessees' security deposits never came into Ford Credit's possession; and (3) Ford Credit receives no money on lessees' security deposits (and thus has nothing to remit to class members). As the discussion hereinafter indicates, we find that summary judgment was properly entered for Ford Credit and properly denied plaintiff.

Plaintiff maintains that the security deposit on his leased automobile constitutes collateral and makes Ford Credit a secured party pursuant to the UCC's definition of "security interest" (R.C. 1301.01(KK)).

██ "A security interest is an interest in personal property that secures payment or performance of an obligation. Thus, if the security deposit is personal property, and if its purpose is to secure payment or performance of the lessee's obligations under the lease, the deposit is a security interest under Ohio law."

There is a limited amount of authority in Ohio regarding whether an automobile lease security deposit is governed by the UCC. The only cases on point are lower court cases from this county that have held that R.C. 1309.18 does not apply to automobile security deposit leases. See *Dolan v. Gen. Motors Acceptance Corp.* (Aug. 2, 1998), C.P. No. 33180, unreported; *Webster v. Huntington Natl. Bank* (Mar. 17, 1998), C.P. No. 321649, unreported.

The majority of courts, however, from other jurisdictions have also found that their statutory counterpart for UCC 9–207 does not apply to automobile security deposit leases. Some of these courts have held that the UCC does not apply to the security deposit because of more specific legislation dealing with security deposits. *Tarnoff v. American Honda Fin. Corp.* (Aug. 7, 1997), N.D.Ill. No. 96 C 6923, unreported, 1997 WL 461059 (Consumer Deposit Security Act governs security deposit not UCC); *Wiskup v. Liberty Buick Co.* (N.D.Ill. 1997), 953 F.Supp. 958 (Consumer Deposit Security Act governs security deposit not UCC); *Steinmetz v. Toyota Motor Credit Corp.* (E.D.N.Y. 1997), 963 F.Supp. 1294 (General Obligations Law section 7–101 governs not the UCC).

██ Unlike the cases above, Ohio contains no specific legislation regarding interest or profits to be paid on lease security deposits. Ohio, however, does have legislation under R.C. Chap. 1310 dealing specifically with leases, yet the General Assembly did not address the topic of interest or profits on security

deposits. If the General Assembly intended that the lessor be obligated to pay the lessee any interest or profits on security deposits it would have made provisions for same in this chapter. When the General Assembly has intended to impose an obligation to pay interest on security deposits, it has done so explicitly and not in an oblique manner as the plaintiff contends was done in R.C. 1309.18. See R.C. 5321.16 (requiring a five percent per annum interest payment of real property lease security deposits under certain conditions); R.C. 3733.18 (requiring five percent per annum interest payment on security deposits for manufactured home park, marina, and agricultural rental agreements under certain conditions); R.C. 4517.27 (requiring licensed manufactured home brokers to maintain trust bank accounts that are noninterest bearing for security deposits.) Therefore, we conclude that it was not the legislative intent that the lessors of automobile leases be obligated to pay the lessee interest or profits earned on the security deposits. See, *Korens v. Zukin Corp.* (1989), 212 Cal.App.3d 1054, 1058, 261 Cal.Rptr. 137, 139 (refusing to create by judicial fiat "a law requiring the payment of interest on security deposits when the legislature has declined to do so.")

Other courts, along with finding that a specific statute other than the UCC governed security deposits, have also found that the UCC 9–207 does not apply to automobile security deposit leases because the deposits are debts and not security interests. *Lawson v. Bank One Lexington, N.A.* (E.D. Kentucky, 1997), 35 F.Supp.2d 961 ("plaintiff's relationship with the bank is one of a debtor/creditor relationship. Accordingly, [UCC 9–207] does not apply to security deposits. * * * [I]n the absence of a statute which mandates that a lessor remit interest earned on security deposits on personal property to the lessee, the court finds that no such duty exists"); *Werbowsky v. Ford Motor Credit Co.* (Apr. 1, 1998), S.D.N.Y. No. 95 Civ. 1876, unreported, 1998 WL 159051 ("prior to the UCC, a majority of the courts had held that the giving of a security deposit on a lease did not create a security interest but merely a debt"); *Spina v. Toyota Motor Credit Corp.* (Mar. 13, 1997), Cir. Ct. Cook Cty., Ill. No. 96CH4888, unreported (This court believes the better position is the majority rule that treats such security deposits, in the absence of legislation to the contrary, as debts not requiring interest to be paid by the lessor.)

As against these authorities, plaintiff cites a single court, which in successive opinions, *Demitropoulos v. Bank One Milwaukee, N.A.* (N.D.Ill.1996), 924 F.Supp. 894 and *Demitropoulos v. Bank One Milwaukee, N.A.* (N.D.Ill.1997), 953 F.Supp. 974, held that a lease security deposit can give rise to a security interest. That reliance is misplaced. See *Spina v. Toyota Motor Credit Corp.* (1998), 301 Ill.App.3d 364, 371, 234 Ill.Dec. 623, 628, 703 N.E.2d 484, 489 ("as the wave of other, more recent federal decisions just discussed demonstrates, the tide ap-

pears to have turned on plaintiffs' once-novel position, as adopted in *Werbosky I* [*Werbosky v. Ford Motor Credit Co.* (S.D.New York, Feb. 22, 1996), No. 95 Civ. 1876, unreported, 1996 WL 76133], and the *Demitropoulos* decisions"). Obviously, the weight of authority has turned in favor of the interpretation for which Ford Credit contends.

■ To hold that a security deposit creates a security interest, *i.e.,* a pledge, would derogate the common law principle that a security deposit instead creates only a debt. See *Friedman on Leases,* (1977) Section 27:56 ("The payment of deposits by a tenant creates a debtor-creditor relationship between the tenant and the person receiving the deposit"); see, also, *Clover, Interest on Security Deposits—Benefit or Burden to Tenant?,* (1978) 26 UCLA L.Rev. 396.

Plaintiff claims that a different rule applies in Ohio, *i.e.,* that a security deposit creates a pledge, or in other words, a security interest.

Plaintiff cites *Castlebrook Ltd. v. Dayton Properties Limited Partnership* (1992), 78 Ohio App.3d 340, 604 N.E.2d 808; *Tuteur v. P. & F. Enterprises, Inc.* (1970), 21 Ohio App.2d 122, 50 O.O.2d 219, 255 N.E.2d 284; *Metropolitan Sav. Bank v. Papadelis* (Sept. 13, 1995), Case No. 2380–M, unreported, 1995 WL 542214, to support his position.

However, none of these cases was concerned with the payment of interest on security deposits, or with whether the debt/pledge distinction has any bearing on this issue. *Castlebrook* and *Papadelis,* instead, were foreclosure actions, while *Tuteur* involved an action for forceable detainer. The issue was identical in all three cases: whether liability to repay a security deposit "runs with the land" or remains with the landlord after transfer of his reversionary interest to a third party. It was in the course of answering this specific question that these courts made the remarks about pledges.

Thus, these courts only intended to distinguish security deposits from "rent, issues, and profits," which, according to the courts, "run with the land." These courts were not attempting to distinguish "pledges" from "debts," but at least in the context in which the terms were used, debts and pledges were one in the same.

■ Even if one assumes, contrary to the previous discussion, that R.C. 1309.18 applies to the automobile lease transactions at issue, we find no evidence that Ford Credit has violated this statute.

The statute provides:

"(B) Unless otherwise agreed, when collateral is in the secured party's possession:

" * * *

"(3) the secured party may hold as additional security any increase or profits, except money, received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation."

■ For there to be a violation of this statute, the following must be true: (1) collateral must be in the secured party's possession; (2) the secured party must have received money from the collateral; (3) the secured party must have failed to remit such money to the debtor or reduce the debtor's obligation; and (4) the parties cannot have otherwise agreed.

The record in this case makes clear that Ford Credit never received possession of the lessee's security deposit. Ford Credit's witnesses testified that, instead, such a deposit is recorded on Ford Credit's books only as a liability. Ford Credit described its accounting process:

"Ford Credit states that it receives no money for motor vehicle lease security deposits. Plaintiff's payment of a security deposit to the dealer creates a debt that the dealer and, after assignment, Ford Credit owes plaintiff as lessee. That debt is transferred from the dealer to Ford Credit by means of the discount Ford Credit pays the dealer in purchasing the leased automobile. The amount Ford Credit pays to the dealer in purchasing the leased automobile is discounted by the amount of the security deposit and the first month's lease payment paid by a lessee to the dealer. Ford Credit never receives possession of a check or other tangible form of payment representing plaintiff's lease security deposit."

Even if plaintiff's security deposit could be considered collateral, then, the fact remains that Ford Credit never came into possession of it.

Plaintiff's explanation that Ford Credit received money is that:

"Ford Credit, solely as an administrative convenience, deducts from what it owes the dealer an amount equivalent to the deposit, in essence retaining money rather than parting with money. But the money retained, which is physically in the possession of Ford Credit, is then designated the lessee's security deposit and is listed as a credit or 'increase' to the Ford Credit security deposit payable account. Thus, Ford Credit treats each security deposit as a sum in its possession."

■ We are not persuaded that listing a security deposit as an increase to a security deposit payable account is the same as a "sum in [Ford Credit's] possession." It is, instead, to treat it as Ford Credit described it, *i.e.*, as a liability or an account payable, to wit, a debt. An account payable entry on a balance sheet by no means implies physical possession of the account to be paid.

This very issue was addressed in *Martin v. Gold Key Lease, Inc.* (N.D.Ill.1997), 988 F.Supp. 1101, where the lessor did exactly what Ford Credit does, *i.e.*,

recorded lessees' security deposits as liabilities and then discounted equivalent amounts from the price paid for leased vehicles. Because this activity did not amount to possession of the security deposits, however, the court held that no violation of UCC 9–207 had occurred and granted summary judgment to the lessor. The court stated:

"In this case, defendant never had physical possession of what plaintiffs claim is the collateral—their security deposits. An amount equal to it was discounted from the price defendants paid for the leases, and the amount was entered as a debt on defendant's books. The parties agree that defendant 'did not and does not receive any money * * * from the security deposits paid by the lessors to the dealer-lessors.' * * * As the parties agree defendant received no money from the purported collateral, there can be no violation of [UCC 9–207]." *Martin* at 1104.

We find the analysis in *Martin* directly applicable to plaintiff's contentions herein that Ford Credit took possession of plaintiff's collateral.

■ Plaintiff also argues that Ford Credit nonetheless receives increases or profits from such deposits,[1] as not paying the dealer for the security deposits enables Ford Credit to borrow less money and thereby save interest on the money not borrowed. All courts addressing the issue conclude that in the absence of interest earned, there can be no violation of UCC 9–207. In *Demitropoulos v. Bank One Milwaukee, N.A.* (N.D.Ill.1997), 953 F.Supp. 974, upon which plaintiff relies, the court flatly rejected plaintiff's position:

"[Plaintiff] argues that [defendant] did earn interest on the security deposit funds, and, as such, 'received' from the collateral 'money' that must be remitted to the class members or used to reduce their obligations. [Plaintiff] concedes that the [defendant] did not place the deposit amounts in an interest-bearing account. He focuses instead on the fact that * * * [defendant] had nearly $6 million in security deposit funds available for use * * * [P]laintiff maintains that this increase in operating funds alleviated the [defendant's] need to borrow * * * and enabled [defendant] to collect interest by lending its excess funds to other banks. [Plaintiff] speculates that any interest saved from not having to borrow or earned from lending may be 'money' that [defendant] 'received' from the collateral and must pass on to the lessees." *Id.* at 985.

---

1. Plaintiff concedes that Ford Credit earns no interest on security deposits, but dismisses this concession on the ground that the term interest nowhere appears in UCC 9–207. What he overlooks, however, is that the receipt, or the failure to remit, increases or profits does not implicate this section either. Indeed, this section expressly permits the retention of increases or profits as additional security. The only thing that must be remitted is money received, but the increase or profits plaintiff believes he can show Ford Credit earned, however, is not the same as money received.

The court held, however, that "[UCC 9–207(2)(c)] cannot sustain such a strained reading." *Id.* The court explained:

"The question is whether having use of the security deposits to avoid borrowing or to increase lending on certain days constitutes 'money * * * received' from collateral, which Bank One must calculate and divide among the lessees. We answer in the negative. First, if [UCC 9–207]'s drafters intended to cover such a specific situation in an area as heavily regulated as banking, they would have made that clear by using language far more precise than 'money received from collateral.' It is not our prerogative to read words into the statute." *Id.*

The court went on to observe that the contrary position "defies common sense" and detailed its other implications:

"If adopted, courts would have license to hold lessors who place security deposits in non-interest-bearing bank accounts liable to lessees for any hypothetical benefits the account might generate, such as an enhanced credit line from the bank. This Court will not, without legislative direction, place on lessors such an onerous burden to discern and calculate every possible benefit, no matter how small or tangential, gained from holding on to a security deposit. The UCC was enacted 'to simplify, clarify and modernize the law governing commercial transactions,' not to complicate and muddle it." *Id.*

All subsequent decisions on this issue expressly embrace the *Demitropoulos* court's reasoning. In *Martin v. Gold Key Lease, Inc.* (N.D.Ill.1997), 988 F.Supp. 1101, for example, the plaintiffs attempted, as plaintiff does here, to exploit the economic benefits the lessor realized by reducing the price it paid for automobiles.

"Plaintiffs urge the court to apply § 9–207(c)(2) because 'the reduction of the purchase price paid by [defendant] for a lease in the amount equivalent to the security deposit has an indirect effect upon [defendant's] cash and borrowing position.' * * * According to plaintiffs, this 'indirect effect' raised a genuine issue as to whether defendant earns interest on security deposits." *Id.*

The court offered two reasons for rejecting the plaintiffs' analysis:

"First, an 'indirect effect on cash and borrowing' is not what the section covers; it covers money received from collateral. Once again there is simply no evidence in the record to demonstrate that defendant received any money from the security deposits. Second, there is no evidence as to what this 'indirect effect' constituted and there is certainly no evidence defendants received interest from security deposits. This is a case where plaintiffs hope to stave off summary judgment with a 'metaphysical doubt' or a 'mere scintilla of evidence,' and such a tactic is insufficient." *Id.*; see, also, *Tarnoff v. Am. Honda Fin. Corp.*, (N.D.Ill. Aug. 7, 1997), Case No. 967–C–6923, unreported, 1997 WL 461059 (following

*Demitropoulos* and disparaging the "plaintiff's attempt to shoehorn the present case into Section 9–207(2)(c) * * * ").

When it is concluded that lessors have earned no interest from lessees' security deposits, it is not necessary to identify some potential increase or profit to trigger UCC 9–207 liability. It is clear that Ford Credit earned no interest on plaintiff's security deposit. We find the trial court properly entered summary judgment for Ford Credit and properly denied summary judgment for the plaintiff.

Plaintiff's sole assignment of error is overruled.

*Judgment affirmed.*

TIMOTHY E. MCMONAGLE and MICHAEL J. CORRIGAN, JJ., concur.